# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CONSOLIDATED HORTICULTURE | ) |
| GROUP LLC, *et al.*,[1] | ) Case No. 10-_____ |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

## DECLARATION OF SANDEEP GUPTA IN SUPPORT OF MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (B) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (C) AUTHORIZING USE OF CASH COLLATERAL, (D) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, AND (E) SCHEDULING A FINAL HEARING

I, Sandeep Gupta, hereby declare and state as follows:

1. I am a Managing Director in the Corporate Finance practice of FTI Consulting, Inc. ("FTI"). I have over ten years of turnaround and restructuring experience. My capabilities range from stabilizing operations of businesses experiencing a liquidity crisis to improving the financial performance of underperforming businesses. My capabilities also include developing alternative strategies for businesses that are no longer viable on a stand alone basis.

2. Prior to joining FTI, I spent eight years with Silverman Consulting, a boutique restructuring advisory firm based in Chicago. Prior to Silverman, I was an operational and strategy consultant for two years with Arthur D. Little. I also have six years of experience as

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: Consolidated Horticulture Group LLC (2698); New Hines Parent Company LLC (9355); and Hines Nurseries LLC (2567). The location of the Debtors' headquarters and the service address for the Debtors is: 12621 Jeffrey Road, Irvine, California 92620.

an engineer for Exelon Corporation's Commonwealth Edison power generation business in Chicago.

3. I hold an MBA in finance and business strategy from the University of Chicago and a B.S. in mechanical engineering from the University of Illinois at Chicago.

4. In August 2010, the above-captioned debtors and debtors-in-possession (the "Debtors") retained FTI, and I was subsequently appointed as the Chief Restructuring Officer.

5. In my capacity as Chief Restructuring Officer of the Debtors, I am familiar with the Debtors' day-to-day operations, business affairs, and books and records.

6. I submit this declaration in support of the Debtors' motion (the "Motion")[2] for entry of interim and final orders authorizing the Debtors to obtain secured postpetition financing in the amount of up to $20,000,000 on a superpriority, "priming" basis (the "DIP Facility"), of which the sum of $5,000,000 would be available on an interim basis pursuant to the Interim Order and the terms and conditions of that certain Revolving Loan Promissory Note as the same may be amended, supplemented, restated or otherwise modified from time to time (the "DIP Demand Note") by and among Hines Nurseries LLC in its capacity as borrower ("Hines" or the "Borrower"), Consolidated Horticulture Group LLC and New Hines Parent Company LLC as guarantors (collectively, the "Guarantors"), Black Diamond Commercial Finance, L.L.C., as administrative agent (the "DIP Agent"), and the other lenders party thereto (each a "DIP Lender" and collectively, the "DIP Lenders"), and granting related relief.[3]

---

[2] Capitalized terms not defined herein shall have the meanings set forth in the Motion.
[3] The DIP Lenders are expected to be affiliates of the DIP Agent. As disclosed further below, the DIP Agent and the DIP Lenders are affiliated with entities holding 100% of the equity interests in the Debtors and also hold a substantial portion of the Debtors' prepetition secured debt.

7. Except as otherwise indicated, all statements set forth in this affidavit are based upon: (a) my personal knowledge, (b) documents and other information prepared or collected by other members of the Debtors' management, their employees, or their professionals, or (c) my review of relevant documents. If I were called upon to testify, I could and would testify competently to the facts set forth herein based upon my personal knowledge, review of documents, or opinion. I am authorized to submit this Declaration on behalf of the Debtors.

## The Debtors' Prepetition Credit Agreements

### A. The Prepetition Revolving Loan

8. Before the commencement of the Debtors' Chapter 11 Cases, pursuant to that certain Loan and Security Agreement, dated as of January 9, 2009 (as amended, restated, supplemented or otherwise modified from time to time, the "ABL Credit Facility"), by and among Hines, as borrower, the financial institutions, as lenders (collectively, the "ABL Lenders"), and Bank of America, N.A., individually as a lender and as agent for the ABL Lenders (as the agent, the "ABL Agent"), the ABL Lenders[4] agreed to make certain loans and other financial accommodations to Hines, including a revolving credit facility in an aggregate amount of up to $78 million, with a $15 million letter of credit sub-limit. Under the loan documents executed as of January 9, 2009 (as they have been amended, restated, supplemented or otherwise modified from time to time, together with the ABL Credit Facility, the "ABL Credit Facility Documents"), Hines granted to the ABL Agent, for the benefit of itself and the ABL

---

[4] The ABL Lenders include BDCM Opportunity Fund II, L.P. and BDC Finance, L.L.C., affiliates of the DIP Agent and the DIP Lenders, who hold (in the aggregate) approximately 53% of the Revolver Commitments.

Lenders under the ABL Credit Facility Documents, security interests in and liens upon substantially all of the property of Hines (collectively, the "Hines Prepetition Collateral").

9. Pursuant to that certain Guaranty Agreement, also dated as of January 9, 2009 (as amended, modified, restated, reaffirmed or supplemented prior to the date hereof, the "Guaranty Agreement"), Hines Parent unconditionally guaranteed the obligations of Hines under the ABL Credit Facility Documents. To secure all obligations under the Guaranty Agreement and ABL Credit Facility Documents, Hines Parent executed that certain Security Agreement, also dated January 9, 2009 (as amended, modified, restated, reaffirmed or supplemented prior to the date hereof, the "Parent's Security Agreement"). In the Parent's Security Agreement, Hines Parent granted to the ABL Agent, for the benefit of the ABL Lenders, a security interest in and lien upon substantially all the property of Hines Parent (collectively, with the Hines Prepetition Collateral, the "Prepetition Collateral").

**B.    The Prepetition Term Loan**

10. Pursuant to that certain Term Loan and Security Agreement, dated January 9, 2009 (as amended, restated, supplemented or otherwise modified from time to time, the "Term Loan Credit Facility"), by and among Hines, as borrower, the financial institutions, as lenders (collectively, the "Term Loan Lenders"), and Black Diamond Commercial Finance, L.L.C., as agent for the Term Loan Lenders[5] (the "Term Loan Agent"), the Term Loan Lenders agreed, subject to the terms and conditions set forth in the Term Loan Credit Facility, to loan Hines the principal amount of $8.0 million.

---

[5] The Term Loan Lenders are BDCM Opportunity Fund II, L.P. and BDC Finance, L.L.C., affiliates of the DIP Agent and the DIP Lenders.

### C. The Prepetition Subordinated Loan

11. Pursuant to that certain Subordinated Loan and Security Agreement, also dated January 9, 2009 (as amended, restated, supplemented or otherwise modified from time to time, the "Sub Loan Credit Facility"), by and among Hines, as borrower, the financial institutions, as lenders (collectively, the "Sub Loan Lenders"),[6] and Black Diamond Commercial Finance L.L.C., as agent for the Sub Loan Lenders (the "Sub Loan Agent"), the Sub Loan Lenders agreed, subject to the terms and conditions set forth in the Sub Loan Credit Facility, to loan Hines $10.0 million.

12. To secure all obligations under the Term Loan Credit Facility and the Sub Loan Credit Facility (collectively, as amended, restated, supplemented or otherwise modified from time to time, the "Term Loan and Sub Loan Credit Facilities"), Hines granted to the Term Loan Agent, for the benefit of the Term Loan Lenders and the Sub Loan Agent, for the benefit of the Sub Loan Lenders (collectively, the "Term Loan and Sub Loan Lenders") a security interest in and lien upon substantially all of the Prepetition Collateral; provided, however, that (a) the liens and security interests of the ABL Lenders and the Term Loan Lenders are subject to that certain Intercreditor Agreement, dated January 9, 2009 (as amended, restated, supplemented or otherwise modified from time to time, the "Intercreditor Agreement"), by and among, (i) Hines, as borrower, (ii) the ABL Agent, on behalf the ABL Lenders, and (iii) the Term Loan Agent, on behalf of the Term Loan Lenders, and (b) the liens and security interests of the Sub Loan Lenders are subject to that certain Subordination and Intercreditor Agreement, also dated January

---

[6] The Sub Loan Lenders are BDCM Partners I, L.P., BDCM Opportunity Fund II, L.P. and BDC Finance Intermediate Corp. (CHG), affiliates of the DIP Agent and the DIP Lenders.

9, 2009 (as amended, restated, supplemented or otherwise modified from time to time, the "Subordination Agreement"), by and among (i) Hines, as borrower, (ii) the ABL Agent, on behalf of the ABL Lenders, (iii) the Term Loan Agent, on behalf of both the Term Loan Lenders, and (iv) the Sub Loan Agent, for the benefit of the Sub Loan Lenders. Pursuant to the Intercreditor Agreement, (x) the Term Loan Agent, for the benefit of the Term Loan Lenders, has a senior lien on the Term Loan Primary Collateral (primarily including real property and fixed assets) and a junior lien on the Revolving Credit Primary Collateral, and (y) the ABL Agent, for the benefit of the ABL Lenders, has a senior lien on the ABL Primary Collateral (primarily including inventory and accounts receivables) and a junior lien on the Term Loan Primary Collateral. Pursuant to the terms of the Subordination Agreement, the liens and security interests granted to the Sub Loan Agent for the benefit of the Sub Loan Lenders are subordinated to the liens and security interests granted to the Term Loan Agent for the benefit of the Term Loan Lenders and the ABL Agent for the benefit of the ABL Lenders.

13. As of the Petition Date, Hines and Hines Parent are indebted to (a) the ABL Lenders in the amount of not less than $48,565,895.30 (plus interest, fees and expenses to the extent provided in the facility), (b) the Term Loan Lenders in the amount of not less than $8,000,000.00 (plus interest, fees and expenses to the extent provided in the facility), and (c) the Sub Loan Lenders in the amount of not less than $16,781,451.42 (plus interest, fees and expenses to the extent provided in the facility). The aggregate due on the Prepetition Credit Agreements, as of the Petition Date, is approximately $71,367,346.72 (collectively, the "Prepetition Indebtedness").

14. The DIP Facility will be senior to, and will "prime," the Prepetition Indebtedness on a consensual basis. At this time, such consent has been obtained for purpose of entry of the proposed Interim Order, and is subject to the reservation of rights contained in paragraph 46 of the Interim Order.

### Debtors' Relationship with Black Diamond

15. The ultimate holders of the entirety of the Debtors' equity interests, and a substantial portion of the Prepetition Indebtedness, are affiliates of the DIP Agent and the DIP Lenders. Specifically, affiliates of the DIP Agent and the DIP Lenders hold approximately 53% of the outstanding obligations under the ABL Credit Facility, and the entirety of the obligations under both the Term Loan Credit Facility and the Sub Loan Credit Facility. Affiliates of the DIP Agent and the DIP Lenders also have other claims against the Debtors.

16. In large part as a result of the foregoing connections, the DIP Agent and the DIP Lenders are willing to advance further funds to the Debtors on the terms of the DIP Facility in order to allow these estates to maximize the value of their assets for the benefit of all constituents.

### FTI Consulting

17. As noted above, in August 2010, the Debtors retained FTI to provide the Debtors with certain financial advisory and consulting services.

18. Since that time, I along with my team at FTI have worked to provide the Prepetition Lenders with budgets, projections and other information regarding the current Debtors' business operations and projections based on various models and assumptions. At the

same time, I and my team have attempted to implement systems to enhance the near and long term profitability of the Debtors, and have assisted in negotiating the terms of the DIP Facility.

### Need for the DIP Facility and Use of Cash Collateral

19. The Debtors have an immediate and critical need to obtain postpetition financing under the DIP Facility and to use cash collateral. The Debtors' access to sufficient working capital and liquidity through the incurrence of postpetition financing under the DIP Facility and the use of cash collateral is vital to maximizing the value of the Debtors' estates. Consequently, without access to the DIP Facility and the continued use of cash collateral, the Debtors and their estates would suffer immediate and irreparable harm because they could not continue to operate.

20. The use of cash collateral alone would be insufficient to meet the Debtors' postpetition liquidity needs. The Debtors are unable to obtain (i) adequate unsecured credit, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of the Debtors' estates and (y) a junior lien on encumbered assets, or (iii) secured credit from sources other than the DIP Lenders on terms more favorable than the terms of the DIP Facility. The only source of secured credit available to the Debtors, other than the use of cash collateral, is the DIP Facility. The Debtors require both additional financing under the DIP Facility and the continued use of cash collateral in order to satisfy their postpetition liquidity needs.

21. The DIP Lenders have indicated a willingness to provide the Debtors with certain financing commitments, but solely on the terms and conditions set forth in the DIP Demand Note and the Interim Order. After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by

the DIP Lenders pursuant to the terms of the DIP Demand Note and the Interim Order represents the best financing presently available to the Debtors.

22. The Debtors have negotiated the DIP Facility and the DIP Demand Note in good faith and at arm's-length with the DIP Agent. The Debtors believe that the terms of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Moreover, the Prepetition Lenders have consented, on an interim basis, to the terms of the DIP Facility including the use of Cash Collateral and the priming of their liens, subject to a reservation of rights described at paragraph 46 of the proposed Interim Order approving the DIP Facility.

23. The principal terms of the proposed DIP Facility are summarized in the Motion, and incorporated here by this reference.

24. The Debtors face severe liquidity restraints and were forced to file these Chapter 11 Cases to preserve the value of their assets. The Debtors' immediate need for liquidity and the extreme urgency of the situation prevented the Debtors from undertaking prior to the Petition Date an extensive marketing effort to obtain proposals for debtor in possession financing. Indeed, without the agreement of the Debtors' existing prepetition lender, Black Diamond Commercial Finance, L.L.C., to provide the Debtors with postpetition financing, the Debtors would have been unable to continue to fund payroll and meet other ordinary course obligations, resulting in a shutdown of the business, the termination of all employees, and the forced liquidation of all assets. In the absence of immediate approval of the DIP Financing and use of Cash Collateral on an interim basis, the Debtors will have no choice but to immediately

discontinue operations, resulting in immediate and irreparable harm to the Debtors, their creditors and their estates.

25. Based on current market conditions and my efforts to solicit alternative sources of capital to date, I believe the Debtors would not have been successful in obtaining financing on terms more favorable than these presented here. However, under the existing DIP Facility, the Debtors will have another opportunity to test the market prior to entry of the Final Order without incurring any additional expense to the estate.

26. Specifically, under the current DIP Facility, the Debtors are not being charged any up front commitment or other fees, and the Debtors will not be obligated to pay either any Exit Fee or Reduction Fee until after the entry of the Final Orders. Accordingly, the Debtors will have the opportunity to solicit additional offers of third party financing without any penalty being borne by the Debtors' estates.

27. As described above, the Debtors have exercised sound business judgment in determining the appropriateness of the DIP Facility and submit they have satisfied the legal prerequisites to incur debt on the terms and conditions set forth in the DIP Facility. The Debtors believe that the DIP Facility contains terms that are the best available under the circumstances.

28. The funds provided by the DIP Facility are essential to enable the Debtors to avoid irreparable harm to the Debtors' assets and business.

29. Accordingly, I respectfully submit that they should be granted authority to enter into the DIP Facility and obtain funds from the DIP Lenders on the secured and administrative superpriority basis described herein and in the Motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration is executed on October 11, 2010 at Chicago, Illinois.

_____
Sandeep Gupta