## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------x

In re:

CONSOLIDATED HORTICULTURE
GROUP LLC, *et al.,*[1]

              Debtors.

---------------------------------------------------------x

Chapter 11

Case No. 10-13308 (CSS)

Jointly Administered

Related Docket No. 15

### FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364

      Upon the motion (the "Motion") dated October 12, 2010, seeking the entry of an interim and final orders, *inter alia,* authorizing the Debtors to (a) obtain secured postpetition financing on a superpriority basis (the "DIP Facility") pursuant to the terms and conditions of that certain Revolving Loan Promissory Note (as amended, supplemented, restated or otherwise modified from time to time, the "DIP Demand Note"), by and among Hines Nurseries LLC, in its capacity as borrower (the "Borrower") and Consolidated Horticulture Group, LLC and New Hines Parent Company LLC, in their capacities as guarantors (collectively, the "Guarantors") and Black Diamond Commercial Finance, L.L.C. as administrative agent (the "DIP Agent") and the other lenders party thereto from time to time (each a "DIP Lender" and, collectively, the "DIP Lenders") on the terms of the DIP Demand Note, (b) authorizing the Debtors to execute the DIP Demand Note and any other documents, agreements and instruments delivered pursuant thereto

---

[1]     The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: Consolidated Horticulture Group LLC (2698); New Hines Parent Company LLC (9355); and Hines Nurseries LLC (2567) The location of the Debtors' headquarters and the service address for the Debtors is: 12621 Jeffrey Road, Irvine, California 92620.

or executed or filed in connection therewith (as amended from time to time, collectively, the "DIP Loan Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents, (c) subject to the Carve Out (as defined herein), granting the DIP Agent and the DIP Lenders first priority security interests in and liens on all of the DIP Collateral (defined herein) on account of the DIP Facility and all obligations owing thereunder and under the DIP Loan Documents (collectively, and including all "Obligations" as described in the DIP Demand Note, the "DIP Obligations"), (d) subject to the Carve Out, granting allowed superpriority expense claims to the DIP Agent and the DIP Lenders, (e) authorizing the use of the Prepetition Lenders' (defined herein) Cash Collateral (defined herein), (f) providing adequate protection for any diminution in value of the Prepetition Collateral (defined herein) to the Prepetition Lenders, and (g) scheduling pursuant to Bankruptcy Rule 4001(c)(2) a hearing (the "Final Hearing") to consider entry of the Final Order (defined below); and the Court having scheduled an initial hearing on the Motion for October 14, 2010 (the "Initial Interim Hearing"); and due notice of the Initial Interim Hearing having been given and the Initial Interim Hearing having been held on October 14, 2010; and the Court having entered that certain Interim Order (I) Authorizing Debtors (A) To Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 364(c)(1), 364 (c)(2), 364(c)(3), 364(d)(1) and 364(e), And (B) To Utilize Cash Collateral Pursuant To 11 U.S.C. § 363, (II) Granting Adequate Protection To Prepetition Secured Parties Pursuant To 11 U.S.C. §§ 361, 363 and 364, And (III) Scheduling A Final Hearing Pursuant To Bankruptcy Rules 4001(b) (the "First Interim Order"); and the Court having set November 8, 2010 as the date for a hearing with respect to entry of the Final Order, which date was adjourned to November 10, 2010 (the "Second Interim Hearing"); and the Debtors having requested that this Court enter the Second Interim Order (I) Authorizing Debtors

(A) To Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 364(c)(1), 364 (c)(2), 364(c)(3), 364(d)(1) and 364(e), And (B) To Utilize Cash Collateral Pursuant To 11 U.S.C. § 363, (II) Granting Adequate Protection To Prepetition Secured Parties Pursuant To 11 U.S.C. §§ 361, 363 and 364, And (III) Scheduling A Final Hearing Pursuant To Bankruptcy Rules 4001(b) (the "Second Interim Order") extending the First Interim Order and setting a new date for a hearing with respect to entry of a Final Order; and the Court having entered the Second Interim Order and having set November 29, 2010 as the new date for entry of the Final Order (the "Third Interim Hearing") (together with the First Interim Hearing and the Second Interim Hearing, the "Interim Hearings"); and the Debtors having requested that this Court enter the Third Interim Order (I) Authorizing Debtors (A) To Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 364(c)(1), 364 (c)(2), 364(c)(3), 364(d)(1) and 364(e), And (B) To Utilize Cash Collateral Pursuant To 11 U.S.C. § 363, (II) Granting Adequate Protection To Prepetition Secured Parties Pursuant To 11 U.S.C. §§ 361, 363 and 364, And (III) Scheduling A Final Hearing Pursuant To Bankruptcy Rules 4001(b) (the "Third Interim Order")[2] extending the Second Interim Order and setting a new date for a hearing with respect to entry of a Final Order; and the Court having entered the Third Interim Order and having set December 14, 2010, as the new date for the Final Hearing; and the Debtors having requested that this Court enter this Final Order (I) Authorizing Debtors (A) To Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 364(c)(1), 364 (c)(2), 364(c)(3), 364(d)(1) and 364(e), And (B) To Utilize Cash Collateral Pursuant To 11 U.S.C. § 363, And (II) Granting Adequate Protection To Prepetition Secured Parties Pursuant To 11 U.S.C. §§ 361, 363 and 364 (the "Final Order"); and due notice of the request for entry of this Final Order having been given; and based upon all of the pleadings filed with the Court, the

---

[2] The First Interim Order, the Second Interim Order and the Third Interim Order are collectively referred to herein as the "Interim Orders".

evidence presented at the Interim Hearings, the Final Hearing and the entire record herein; and the Prepetition Agents and Prepetition Lenders (each as defined herein) having consented to the Debtors' use of Cash Collateral, the execution and delivery by the Debtors of the DIP Loan Documents, the granting of liens and claims contemplated thereby, and the performance by the Debtors of their obligations thereunder and hereunder; and the Court having heard and resolved or overruled all objections to the relief requested in the Motion and the Final Order; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion and entry of the Final Order on the terms and conditions set forth herein is in the best interests of the Debtors, their estates, and creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

**IT IS HEREBY FOUND:[3]**

> A.   <u>Petition Date</u>.  On October 12, 2010 (the "<u>Petition Date</u>"), the Debtors commenced their chapter 11 cases (the "<u>Chapter 11 Cases</u>") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").  The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.  On October 26, 2010, a committee of creditors holding unsecured claims was appointed under section 1102(a) of the Bankruptcy Code (the "<u>Committee</u>") in the Chapter 11 Cases.

> B.   <u>Jurisdiction; Venue</u>.  The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334.  This is a core

---

[3]   Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

proceeding pursuant to 28 U.S.C. §157(b)(2)(D). Venue of these Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

        C.    <u>Prepetition Loan Documents</u>. The prepetition facilities consist of (i) the Loan and Security Agreement dated as of January 9, 2009 (the "<u>ABL Credit Facility</u>") by and among Hines Nurseries, LLC as borrower, Bank of America, N.A., as agent (in such capacity, the "<u>ABL Agent</u>"), and the other lenders from time to time parties thereto (the "<u>ABL Lenders</u>"), (ii) the Term Loan and Security Agreement dated as of January 9, 2009 (the "<u>Term Loan Credit Facility</u>"), by and among Hines Nurseries LLC as borrower, Black Diamond Commercial Finance, L.L.C., as administrative agent (in such capacity, the "<u>Term Loan Agent</u>") and the other lenders from time to time parties thereto (the "<u>Term Loan Lenders</u>") and (iii) the Subordinated Loan and Security Agreement dated as of January 9, 2009 (the "<u>Sub Loan Credit Facility</u>") (together with the ABL Credit Facility and the Term Loan Credit Facility, the "<u>Prepetition Credit Agreements</u>") by and among Hines Nurseries, LLC, as borrower, Black Diamond Commercial Finance, L.L.C., as administrative agent (in such capacity, the "<u>Sub Loan Agent</u>") (together with the ABL Agent and the Term Loan Agent, the "<u>Prepetition Agents</u>"), and the other lenders from time to time parties thereto (the "<u>Sub Loan Lenders</u>") (together with the ABL Lenders and the Term Loan Lenders, the "<u>Prepetition Lenders</u>").

        D.    <u>Prepetition Indebtedness</u>. For purposes of this Final Order, the term "<u>Prepetition Indebtedness</u>" shall mean all amounts owed, as of the Petition Date, under the Prepetition Credit Agreements.

        E.    <u>Prepetition Liens</u>. To secure the Prepetition Indebtedness, the Debtors granted the Prepetition Agents for the benefit of the Prepetition Lenders liens and senior security interests (the "<u>Prepetition Liens</u>") upon and in substantially all of the Debtors' property and

assets, including, without limitation, real property, equipment, inventory, tax refunds, insurance proceeds, accounts receivable, instruments, chattel paper, general intangibles, contracts, documents of title, and all other tangible and intangible personal property and the proceeds and products thereof (the "Prepetition Collateral"). The rights of the ABL Agent, the ABL Lenders, the Term Loan Agent and the Term Loan Lenders in respect of the Prepetition Collateral are set forth in that certain Intercreditor Agreement dated as of January 9, 2009 (as amended, restated or otherwise modified from time to time, the "Intercreditor Agreement") among Hines Nurseries LLC, Bank of America, as agent under the ABL Credit Facility, and Black Diamond Commercial Finance, L.L.C., as agent under the Term Loan Credit Facility. Pursuant to the Intercreditor Agreement, the Term Loan Agent, for the benefit of the Term Loan Lenders, has a senior lien on the Term Loan Primary Collateral (as defined in the Intercreditor Agreement) and a junior lien on the Revolving Credit Primary Collateral (as defined in the Intercreditor Agreement) and the ABL Agent, for the benefit of the ABL Lenders, has a senior lien on the ABL Primary Collateral (as defined in the Intercreditor Agreement) and a junior lien on the Term Loan Primary Collateral. In addition, the rights of the Sub Loan Agent and Sub Loan Lenders in respect of the Prepetition Collateral are subject to the terms and conditions of the Subordination and Intercreditor Agreement dated as of January 9, 2009 (as amended, restated or otherwise modified from time to time, the "Subordination Agreement") by and among Hines Nurseries, LLC, the ABL Agent, on behalf of the ABL Lenders, the Term Loan Agent, on behalf of the Term Loan Lenders, and the Sub Loan Agent, on behalf of the Sub Loan Lenders. Pursuant to the terms of the Subordination Agreement, the liens and security interests granted to the Sub Loan Agent, for the benefit of the Sub Loan Lenders, are subordinated to the liens and

security interests granted to the Term Loan Agent, for the benefit of the Term Loan Lenders, and the liens and security interests granted to the ABL Agent, for the benefit of the ABL Lenders.

F.     Debtors' Acknowledgments & Stipulations.  In requesting the DIP Loans (defined below) under the DIP Loan Documents, the Debtors acknowledge, represent, stipulate, and agree (which acknowledgments, representations and stipulations shall be binding on the Debtors' estates subject to section 14 of this Final Order) that:

(i)     the Debtors have obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, validity and enforceability of the DIP Loan Documents and the use of Cash Collateral (defined below) to which any Debtor is a party;

(ii)     until such time as all DIP Obligations are indefeasibly paid in full in cash the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens and security interests provided under the Interim Orders or this Final Order to the DIP Agent and the DIP Lenders by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code, or otherwise, upon the DIP Collateral, except with respect to the Carve-Out or as otherwise agreed in writing by the DIP Agent;

(iii)     until such time as all DIP Obligations are indefeasibly paid in full in cash the Debtors shall not in any way or at any time permit to exist an administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses of the kind specified in, or arising or ordered under sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 of the Bankruptcy

Code having priority equal or superior to the priority of the Superpriority Claim (defined below) provided herein, except with respect to the Carve-Out;

(iv)   the DIP Agent is not a control person or insider of the Debtors by virtue of any of the actions taken by the DIP Agent in respect of or in connection with the DIP Loans;

(v)   the Debtors have requested that the Prepetition Lenders consent to, among other things, (x) the Debtors' use of the Cash Collateral (defined herein) and the other Prepetition Collateral and (y) the incurrence of the DIP Loans by the Borrower and the Guarantors' guarantees of the DIP Loans under the DIP Loan Documents and the Debtors' granting of Postpetition Liens (defined herein) in connection therewith. The Debtors acknowledge and stipulate that the Prepetition Lenders are entitled, pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral (as defined herein), in exchange for the Debtors' use of such Prepetition Collateral to the extent of the aggregate diminution in value, if any, of the Prepetition Lenders' Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors of Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition Lenders' security interests and liens in the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Loan Documents, the Interim Orders and the Final Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

(vi)   as of the Petition Date, the aggregate principal amount outstanding under (x) the ABL Credit Facility was not less than $48,565,895.30, (y) the Term Loan Credit Facility was not less than $8,000,000, and (z) the Sub Loan Credit Facility was not less than $16,781,451.42. With respect to each Facility, the Debtors are also indebted to the Lenders for

accrued and unpaid interest, fees, costs and expenses to the extent provided in the applicable Facility. All of the Prepetition Indebtedness is unconditionally owing by the Debtors to the Prepetition Lenders and the claims in respect of the Prepetition Indebtedness are not subject to avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity;

(vii) the Prepetition Liens constitute valid, binding, enforceable, and perfected liens with priority over any and all other liens (other than liens permitted by the terms of the documents governing the Prepetition Indebtedness) and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reduction, recharacterization, subordination (whether equitable, contractual or otherwise), claim, counterclaim, cross-claim, offset, defense or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity;

(viii) the Debtors have waived, discharged and released any right they may have to challenge the Prepetition Indebtedness, the Prepetition Liens or the Prepetition Collateral and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Prepetition Agents or the Prepetition Lenders (or any of them);

(ix) any payments made on account of the Prepetition Indebtedness to or for the benefit of the Prepetition Agents or the Prepetition Lenders prior to the Petition Date were payments out of the Prepetition Agents' and the Prepetition Lenders' Prepetition Collateral, and such payments were made in the ordinary course of business and did not diminish any property otherwise available for distribution to unsecured creditors; and

(x)     all of the Debtor's cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral constitutes Cash Collateral (as defined in G below) of the Prepetition Agents and the Prepetition Lenders.

G.     <u>Cash Collateral</u>.  For purposes of the Interim Orders and this Final Order, the term "<u>Cash Collateral</u>" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in which the DIP Agent or any of the Prepetition Agents have, for the benefit of the DIP Lenders or the Prepetition Lenders, respectively, a lien, security interest or other similar interest (including, without limitation, any adequate protection liens or security interests) whether existing on or after the Petition Date, arising pursuant to the Interim Orders, this Final Order or otherwise, and shall include, without limitation, (i) all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any property upon which the DIP Agent or the Prepetition Agents hold a lien or a replacement lien, whether as part of the Prepetition Collateral, the Postpetition Collateral (defined below) or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of this Chapter 11 Case, or arose or was generated thereafter, and (ii) all of the respective deposits, refund claims and rights in retainers of the Debtors, if any, upon which the DIP Agent or the Prepetition Agents hold a lien or replacement lien, whether as part of the Prepetition Collateral, Postpetition Collateral or pursuant to an order of the Court or applicable law or otherwise.

H.     <u>Purpose and Necessity of Financing & Use of Cash Collateral</u>.  The Debtors require the financing described in the Motion to operate their businesses and to fund, among other things, ongoing working capital requirements of the Debtors consistent with the

terms set forth in the DIP Loan Documents, and for other purposes permitted by the DIP Loan Documents. If the Debtors do not obtain authorization to borrow under the DIP Loan Documents, the Debtors will suffer immediate and irreparable harm and will be forced to immediately cease business operations, to the detriment of all creditors and other parties in interest. The Debtors believe that, given the existence of the Prepetition Indebtedness and the Prepetition Liens, that they would be unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents based on the totality of the circumstances. The Debtors further believe that for these same reasons, a loan facility in the amount provided by the DIP Loan Documents would not be available to the Debtors without granting the DIP Agent, for the benefit of the DIP Lenders, superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), (2), and (3), and 364(d) of the Bankruptcy Code, as provided in the Interim Orders, this Final Order, and the DIP Loan Documents. After considering all available alternatives in light of the capital structure of the Debtors, the Debtors have concluded, in the exercise of their prudent business judgment, that the loan facility provided under the DIP Loan Documents represents the best working capital financing available to them at this time.

I. Good Cause Shown. Good cause has been shown for entry of this Final Order. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents and use of Cash Collateral is vital to the Debtors' estates and creditors. The liquidity to be provided under the DIP Loan Documents and through the use of the Cash Collateral will enable the Debtors to continue to operate their businesses in the ordinary course, fund the sale process and preserve the value of the Debtors' businesses. Among other things,

entry of this Final Order is intended to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to, and is in the best interests of, the Debtors, their estates and their creditors.

J.     Sections 506(c) & 552(b) Waivers.  In light of (i) the DIP Agent's and the DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve-Out and to finance the Debtors' chapter 11 cases in accordance with the Budget (defined herein) and (ii) the Prepetition Agents' and the Prepetition Lenders' agreement to subordinate their liens and superpriority claims to the Carve-Out and the DIP Liens, the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders are each entitled to a waiver of "any equities of the case" claims under section 552(b) of the Bankruptcy Code and a waiver of the provisions of section 506(c) of the Bankruptcy Code.

K.     Good Faith.  Based upon the record before the Court, the DIP Loan Documents have been negotiated in good faith and at arm's-length among the Debtors, the DIP Lenders, the DIP Agent, and the Guarantors.  Any DIP Loans and other financial accommodations made to the Debtors by the DIP Agent on behalf of the DIP Lenders pursuant to the Interim Orders, this Final Order and the other DIP Loan Documents shall be deemed to have been extended by the DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders shall be entitled to all protections afforded thereby.

L.     Fair Consideration & Reasonably Equivalent Value.  All of the Debtors will receive and have received fair and reasonable consideration in exchange for access to the DIP Loans, the use of Cash Collateral, and all other financial accommodations provided under the DIP Loan Documents, the Interim Orders and this Final Order.  The terms of the DIP Loan

Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M.    [intentionally deleted]

N.    Consent. Subject to the reservation of rights set forth in paragraph 47 of this Final Order, the ABL Agent, on behalf of the ABL Lenders, the Term Loan Agent, on behalf of the Term Loan Lenders, and the Sub Loan Agent, on behalf of the Sub Loan Lenders, have each consented to the Debtors' use of Cash Collateral, the execution and delivery by the Debtors of the DIP Facility, the granting of the liens and claims contemplated thereby, and the performance by the Debtors of their obligations thereunder.

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    Disposition. The Debtors' request for entry of the Final Order is granted on the terms set forth herein. Any objection to such relief that has not previously been withdrawn or resolved is hereby overruled on its merits. This Final Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.

**DIP FINANCING AUTHORIZATION**

2.    Authorization to Obtain Financing & Use of Cash Collateral.

(a)    The Debtors are hereby authorized to obtain postpetition financing (the "DIP Loans") immediately pursuant to the terms of this Final Order and subject to the terms of the Budget (in the form attached hereto as Exhibit A, and as the same may be amended from

time to time in accordance with section 26 of this Final Order; the "Budget"), the DIP Demand Note and the DIP Loan Documents on a final basis in the aggregate principal amount of up to $21,500,000 (the "Maximum Borrowing"), plus any protective advances permitted under the DIP Loan Documents. Available financing and advances under the DIP Facility shall be made to fund, in accordance with the Budget, the DIP Demand Note, the DIP Loan Documents, the Interim Orders and this Final Order (i) ongoing working capital requirements of the Debtors, (ii) interest, fees, and expenses, and (iii) and any other amounts required or allowed to be paid in accordance with the Budget, the Interim Orders, this Final Order, the DIP Demand Note or the DIP Loan Documents (including, without limitation, the costs of administration of these Chapter 11 cases).

(b)     The Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in the Interim Orders, this Final Order, the Budget, the DIP Demand Note and the DIP Loan Documents, without further approval by the Court.

3.     Authority to Execute and Deliver Necessary Documents.

(a)     Each of the Debtors is authorized to negotiate, prepare, enter into, and deliver the DIP Demand Note and the DIP Loan Documents, in each case including any amendments thereto. Each of the Debtors is further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, and mortgages or deeds of trust encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Loan Documents, including repayment of all DIP Obligations in cash, that are requested by the DIP Agent.

(b)     Each of the Debtors is further authorized to (i) perform all of its obligations under the DIP Demand Note and the DIP Loan Documents, and such other agreements as may be required by the DIP Demand Note to give effect to the terms of the financing provided for therein and in the Interim Orders and this Final Order, and (ii) perform all acts required under the DIP Demand Note, the DIP Loan Documents, the Interim Orders and this Final Order.

(c)     Upon the request of the DIP Agent, the Prepetition Agents are authorized to make, execute and deliver such instruments (in each case without representation or warranty of any kind) to enable the DIP Agent to further perfect, preserve, and enforce the Postpetition Liens (defined below).

4.     <u>Valid & Binding Obligations</u>.  All obligations under the DIP Demand Note and the DIP Loan Documents shall constitute valid and binding obligations of each of the Debtors, enforceable against each of them and each of their successors and assigns, in accordance with their terms and the terms of the Interim Orders and this Final Order, and no obligation, payment, transfer or grant of a security under the DIP Demand Note, the DIP Loan Documents or the Interim Orders or this Final Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.     <u>Termination of DIP Loan Documents and Cash Collateral Usage</u>.
Notwithstanding anything in the Interim Orders or this Final Order to the contrary, and subject to

the Carve-Out, the DIP Lenders' obligation to make DIP Loans and the Debtors' authority to use Cash Collateral of all Agents and Lenders shall automatically terminate without any further action by this Court, the DIP Agent or the DIP Lenders upon the earliest to occur of (the "Termination Date") (i) February 28, 2011, (ii) the date of final indefeasible payment and satisfaction in full in cash of the DIP Obligations and the termination of the commitment under the DIP Facility; (iii) the effective date of any confirmed plan in any or all of these Chapter 11 Cases; (iv) the consummation of a sale or other disposition of all or substantially all of the assets of the Debtors whether done by one or a series of transactions (in which case the Termination Date shall not occur until the consummation of the last of such transactions); (v) immediately upon receipt of written notice to the Debtors of the occurrence of any violation by the Debtors of any of the Interim Orders, the Final Order or any Event of Default (after expiration of the Remedies Notice Period (defined herein)) or breach of any negative covenant or affirmative covenant under the DIP Loan Documents which breach is not cured within the time periods set forth in the DIP Loan Documents; (vi) the dismissal of any of these Chapter 11 Cases or the conversion of any of these Chapter 11 Cases into a case under Chapter 7 of the Bankruptcy Code; (vii) a trustee or an examiner with enlarged powers (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business of any Debtor is appointed in any of these Chapter 11 Cases without the prior written consent of the DIP Agent (which consent may be withheld in its sole discretion), or any Debtor applies for, consents to, acquiesces in or fails to object to, any such appointment without the prior written consent of the DIP Agent (which consent may be withheld in its sole discretion); (viii) any of the Interim Orders or this Final Order are stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Agent; (ix) this or any other Court

16

enters an order or judgment in any of these Chapter 11 Cases modifying, limiting, subordinating or avoiding the priority of the DIP Obligations or the perfection, priority or validity of the Superpriority Claim or the Postpetition Liens or imposing, surcharging or assessing against the DIP Agent or the DIP Lenders or their claims or any DIP Collateral any costs or expenses, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise, (x) any breach of the adequate protection provisions set forth in the Interim Orders or this Final Order that is not cured within five (5) business days after the Debtors' receipt of written notice, or entry by this or any other Court of an order or judgment modifying, limiting, or avoiding any aspect of such provisions, or (xi) such earlier date on which the DIP Loans shall become due and payable in accordance with the terms of this Final Order and/or the DIP Loan Documents.

6.    <u>Authorization for Payment of DIP Financing Fees & Expenses</u>.  All fees paid and payable, and costs and/or expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Demand Note, the DIP Loan Documents and the DIP Agent's attorneys' fees and expenses) in connection with the interim financing approved by the Interim Orders and the Maximum Borrowing approved by the Final Order and as set forth in the DIP Demand Note and the DIP Loan Documents, by the Debtors to the DIP Agent are hereby approved.  The Debtors are hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Demand Note, the DIP Loan Documents, the Interim Orders and this Final Order, without the Debtors, the DIP Agent or the DIP Agent's counsel having to file any further application with the Court for approval or payment of such fees, costs or expenses. The Debtors shall pay all reasonable pre-petition and post-petition out of pocket costs and expenses of the DIP Agent and DIP Lenders (including all reasonable fees, expenses and disbursements of outside counsel and consultants) in connection with the

preparation, execution and delivery of the DIP Demand Note, the DIP Loan Documents and the funding of all DIP Loans under the DIP Facility, the administration of the DIP Facility and any amendment or waiver of any provision of the DIP Demand Note or the DIP Loan Documents, and in connection with the enforcement or protection of any of their rights and remedies under the DIP Demand Note or the DIP Loan Documents. Notwithstanding anything to the contrary herein, the fees, costs and expenses of the DIP Agent and DIP Lenders, whether incurred prior to or after the Petition Date, including, without limitation, all fees referred to in the DIP Demand Note and the DIP Loan Documents and all attorneys' fees and expenses, were fully earned, and became non-refundable, and irrevocable, as of the date of the First Interim Order. None of the DIP Agent's nor the DIP Lenders' attorneys, financial advisors and accountants' fees and disbursements shall be subject to the prior approval of this Court or the United States Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Notwithstanding the foregoing, the Debtors shall, promptly after payment of invoices for any such fees and disbursements, provide copies of same to the United States Trustee, counsel for each of the Prepetition Agents and counsel for any Committee appointed in these cases.

7.    Amendments, Consents, Waivers, and Modifications. (a) The Debtors, with the express written consent of the DIP Agent, may enter into any non-material amendments, consents, waivers or modifications to the DIP Demand Note or the DIP Loan Documents without the need for further notice and hearing or any order of this Court, provided, however, that the Debtors shall provide the United States Trustee, counsel for each of the Prepetition Agents and counsel to the Committee with three (3) business days advance notice (which may be provided through electronic mail) of their intent to enter into any non-material amendments, consents,

waivers or modifications to the DIP Loan Documents. Unless the United States Trustee, a Prepetition Agent or the Committee shall object in writing to such amendment, consent, waiver or modification prior to the expiration of the three (3) business day period, such amendment, consent, waiver or modification shall become effective in accordance with its terms without further order of the Court.

(b)    The Debtors and the DIP Agent may enter into material amendments, consents, waivers or modifications to the DIP Demand Note or the DIP Loan Documents only upon the entry of a further order of this Court after notice and a hearing, provided, however, that ten (10) days notice of any such request shall be sufficient unless such time is shortened by order of the Court.

## GRANTING OF POSTPETITION LIENS AND SUPERPRIORITY CLAIMS TO THE DIP LENDERS

8.    DIP Lenders' Lien Priority.

(a)    To secure the DIP Obligations, the DIP Agent was granted pursuant to the First Interim Order (which grant was re-affirmed pursuant to the other Interim Orders and is further re-affirmed pursuant to this Final Order), for the benefit of the DIP Lenders, valid, enforceable and fully perfected, first priority priming liens on and senior security interests (collectively, the "Postpetition Liens") in all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, existing as of the Petition Date or thereafter acquired or created, including, without limitation, Cash Collateral, all accounts, receivables, inventory, goods, contracts, contract rights, investment property, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, general intangibles, payment intangibles, tax or other refunds, insurance

proceeds, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property (including all facilities), fixtures, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)), and all of the issued and outstanding capital stock not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) of each subsidiary of such Debtor, all of the capital stock of all other Persons that are not subsidiaries directly owned by such Debtor, money, investment property, deposit accounts, all commercial tort claims, all causes of action arising under the Bankruptcy Code or otherwise, including, without limitation, all claims, causes of action and recoveries realized pursuant to sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code (the "Avoidance Actions") and all proceeds, products, rents and profits of all of the foregoing and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above (collectively, the "DIP Collateral"), subject only to (i) Permitted Priority Liens (as set forth in the DIP Demand Note), and (ii) the Carve-Out.

(b)     The Postpetition Liens became effective immediately upon the entry of the First Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise other than Permitted Priority Liens.

(c)     The Postpetition Liens were deemed fully perfected liens and security interests, effective and perfected upon the date of the First Interim Order (and shall remain fully perfected from and after the date of this Final Order) without the necessity of execution or filing by the Debtors of mortgages, security agreements, pledge agreements, financing agreements,

financing statements and other agreements or instruments, such that no additional steps need be taken by the DIP Agent or the DIP Lenders to perfect such interests. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, were deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Agent, for the benefit of the DIP Lenders, a first priority security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtors in favor of the DIP Agent, for the benefit of the DIP Lenders, in accordance with the terms of the DIP Demand Note and the other DIP Loan Documents.

9.    <u>DIP Lenders' Superpriority Claim</u>. Pursuant to the First Interim Order, the DIP Agent, for the benefit of the DIP Lenders, was granted (which grant was re-affirmed pursuant to the other Interim Orders and is further re-affirmed pursuant to this Final Order) an allowed superpriority administrative expense claim (the "<u>Superpriority Claim</u>") pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Debtors' Chapter 11 Cases and in any successor cases under the Bankruptcy Code (including a case under chapter 7 of the Bankruptcy Code, the "<u>Successor Cases</u>") for all DIP Obligations, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under

sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre and postpetition property of the Debtors and all proceeds thereof including, without limitation, any proceeds or property recovered in connection with the pursuit of Avoidance Actions. The Superpriority Claim granted in this section shall be subject and subordinate in priority of payment only to, payment of the Carve-Out. Except as set forth herein, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

10. <u>Survival of Postpetition Liens & Superpriority Claim</u>. The Postpetition Liens, Superpriority Claim, and other rights and remedies granted under the First Interim Order (as re-affirmed by the other Interim Orders and this Final Order) to the DIP Agent, for the benefit of the DIP Lenders, shall continue in these and any Successor Cases and shall be valid and enforceable against any trustee appointed in the Debtors' Chapter 11 Cases and/or upon the dismissal of any of the Debtors' Chapter 11 Cases or any Successor Cases and such liens and security interests shall maintain their first priority as provided in the Interim Orders and this Final Order until all the DIP Obligations have been indefeasibly paid in full in cash and the DIP Lenders' commitments have been terminated in accordance with the DIP Loan Documents.

## GRANTING OF ADEQUATE PROTECTION FOR PREPETITION LENDERS

11. <u>Adequate Protection for Prepetition Lenders</u>. Subject to the provisions of paragraph 14(b) of this Final Order, as adequate protection in respect of any diminution in the value of the Prepetition Collateral resulting from the incurrence of the DIP Obligations, the use of Cash Collateral or the granting of the Postpetition Liens, or the imposition of the automatic

stay, the Prepetition Agents and the Prepetition Lenders were granted pursuant to the First Interim Order (which grant was re-affirmed pursuant to the other Interim Orders and is further re-affirmed pursuant to this Final Order) (in each case subject to Permitted Priority Liens, the Postpetition Liens and the Carve-Out) the following ((a) through (j) below shall be referred to collectively as the "Adequate Protection Obligations"):

(a) Adequate Protection Liens. The Prepetition Agents for the benefit of the Prepetition Lenders were granted (which grants were re-affirmed pursuant to the other Interim Orders and are further re-affirmed pursuant to this Final Order) (effective and perfected upon the date of the First Interim Order and without the necessity of execution or filing by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) valid, perfected, postpetition security interests in and liens (the "Replacement Liens") on any and all of the assets of the Debtors including (without limitation) those that fall within the definition of Prepetition Collateral and DIP Collateral (other than Avoidance Actions or the proceeds thereof against any such Prepetition Agent or Prepetition Lender), provided, however, that, notwithstanding anything to the contrary, the Replacement Liens shall be and remain subject and subordinate to (i) the Postpetition Liens and/or payment of any DIP Obligations on account thereof, (ii) Permitted Priority Liens, (iii) permitted liens entitled to priority over the Prepetition Indebtedness to the extent provided in the Prepetition Credit Agreements, and (iv) the Carve-Out. The rights of the Prepetition Agents in respect of the Replacement Liens shall be governed by the Intercreditor Agreement and, in the case of the Sub Loan Agent, the Subordination Agreement.

(b) Adequate Protection Superpriority Claims. The Prepetition Agents and the Prepetition Lenders were respectively granted (which grants were re-affirmed pursuant to the

other Interim Orders and are further re-affirmed pursuant to this Final Order) superpriority claims (the "Adequate Protection Superpriority Claims") with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre and postpetition property of the Debtors and all proceeds thereof including, without limitation, any proceeds recovered in connection with the pursuit of Avoidance Actions (other than proceeds of Avoidance Actions against any such Prepetition Agent or Prepetition Lender). Notwithstanding the foregoing, the Adequate Protection Superpriority Claims shall at all times be subordinate to the Superpriority Claim and the Carve-Out. The rights of the Prepetition Agents in respect of the Adequate Protection Superpriority Claims shall be governed by the Intercreditor Agreement and, in the case of the Sub Loan Agent, the Subordination Agreement.

(c)     Current Cash Payments. The Debtors shall make monthly payments (i) to the ABL Agent, for the benefit of the ABL Lenders, in an amount equal to the default interest that would have been payable for such month on account of the Obligations (as defined in the ABL Credit Facility), calculated and payable in the manner set forth in Sections 3.1.1(a), 3.1.1(b), 3.1.1(c)(i) and 3.3 of the ABL Credit Facility, and (ii) to the Term Loan Agent, for the benefit of the Term Loan Lenders, in an amount equal to the default interest that would have been payable for such month on account of the Obligations (as defined in the Term Loan Credit

Facility), calculated and payable in the manner set forth in Sections 3.1.1(a), 3.1.1(b), 3.1.1(c) and 3.3 of the Term Loan Credit Facility. Notwithstanding anything to the contrary set forth herein, the Committee shall have the right to seek reclassification of any payment made pursuant to this clause (c) as a payment of principal rather than interest.

(d)     Partial Roll Up of ABL Facility. For each dollar of the Debtors' postpetition cash collections, including cash collections during the terms of the Interim Orders (which will be expended either as Cash Collateral or applied to the DIP Obligations as provided in the Interim Orders and this Final Order), an equivalent amount of Prepetition Indebtedness owed under the ABL Credit Facility shall be deemed to have been repaid and re-borrowed on a postpetition basis, so that such amount shall be deemed to be postpetition indebtedness advanced by the ABL Agent on behalf of the ABL Lenders pursuant to sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code, secured by the DIP Collateral but subject and subordinate to Permitted Priority Liens, the DIP Obligations and the Postpetition Liens (the "Roll Up"). Notwithstanding the foregoing, in no event shall the aggregate amount of the Roll Up exceed the lesser of (i) actual collections received by the Debtors on account of ABL Primary Collateral in existence as of the Petition Date, including proceeds thereof, and (ii) the allowed amount of the secured claim of the ABL Lenders as determined in accordance with section 506 of the Bankruptcy Code. Notwithstanding anything to the contrary set forth herein, the indebtedness evidenced by the Roll Up shall in all respects be and remain subject to the terms of the Intercreditor Agreement as if no such roll up had occurred. The Roll Up shall at all times be subordinate to the Carve-Out.

(e)     Payment of Fees and Expenses. Notwithstanding any provision of the Budget, the Debtors shall promptly pay (i) the administration fee payable to the ABL Agent

pursuant to Section 3.2 of the ABL Credit Facility, and (ii) the reasonable prepetition and postpetition legal fees and expenses of the ABL Agent and the Term Loan Agent, to the extent provided in the ABL Credit Facility and Term Loan Facility, respectively, upon the submission of appropriate written invoices, provided that the Debtors' obligation under clause (ii) hereof shall be limited to the payment of one regular outside counsel and one local counsel for each of the ABL Agent and the Term Loan Agent. The Debtors are hereby authorized and directed to pay all such fees, costs and expenses without the ABL Agent's counsel or the Term Loan Agent's counsel having to file any application with the Court for approval or payment of such legal fees, costs or expenses. Notwithstanding the foregoing, the Debtors shall, promptly after payment of invoices of any such fees and disbursements, provide copies of same to the United States Trustee, counsel to the DIP Agent and counsel for the Committee. Notwithstanding anything to the contrary set forth herein, the Committee shall have the right to seek reclassification of any payment made pursuant to this clause (e) as a payment of principal rather than fees, costs or expenses.

(f)     Financial Reporting and Customer Support Information. The Debtors shall provide to the ABL Agent, for the benefit of the ABL Lenders, and to the Committee (i) copies of all financial reports provided to the DIP Agent pursuant to the reporting requirements of the Interim Orders, this Final Order and the DIP Loan Documents, including, but not limited to, all reports delivered pursuant to section 26 of the Interim Orders and this Final Order (ii) copies of all notices received by the Debtors from the DIP Agent or the DIP Lenders pursuant to the terms of the Interim Orders, this Final Order or the DIP Loan Documents, and (iii) all written materials received by the Debtors from customers and delivered to the DIP Agent pursuant to section 15(Q) of the DIP Demand Note. The foregoing requirements shall be in addition to

delivery by the Debtors to the ABL Agent of all financial reports required to be delivered under the ABL Credit Facility, including, but not limited to, the delivery of daily borrowing base certificates.

(g)  Inspections; Appraisals, Audits.  The ABL Agent shall continue to have all rights with respect to inspections, appraisals, and audits  as set forth in Section 10.1.1(a) of the ABL Credit Facility.

(h)  Collateral Access Rights.  The ABL Agent shall continue to have all rights with respect to access to the Mortgaged Premises and Term Loan Primary Collateral as set forth in Sections 3.3 and 3.4 of the Intercreditor Agreement (subject to compliance by the ABL Agent with the terms thereof), provided, however, that the ABL Agent shall not have any right to arrange for or effect the sale or disposition of the ABL Primary Collateral until such time as (i) the ABL Agent has obtained relief from the automatic stay, and (ii) the DIP Obligations have been paid in full in cash and the commitments thereunder terminated.  The DIP Agent agrees to be bound by the provisions of Section 3.3(d) of the Intercreditor Agreement with respect to the disposition of any Mortgaged Premises provided that the ABL Agent's right of access shall be subject to the proviso and clauses (i) and (ii) thereof in the preceding sentence.

(i)  Customer Access.  The Debtors and the DIP Agent shall, upon the request of the ABL Agent, use reasonable best efforts to schedule a meeting among the Debtors, the DIP Agent, the ABL Agent and Home Depot by February 11, 2011, for the purpose of discussing 2011 purchasing and the Debtors' long term supply agreement.

(j)  Right to Purchase DIP Obligations.  Upon the occurrence and during the continuance of an Event of Default, if the DIP Agent and DIP Lenders deliver a notice commencing the Remedies Notice Period (defined herein) and such period shall have expired,

the ABL Agent shall thereafter have thirty (30) days commencing upon the expiration of the Remedies Notice Period to consummate a purchase of all (but not less than all) of the DIP Obligations from the DIP Agent and DIP Lenders (the "Buy-Out Option") . The ABL Agent's right to exercise the Buy-Out Option shall be conditioned upon (i) the delivery to the DIP Agent, for the benefit of the DIP Lenders, of immediately available funds in an amount equal to the aggregate amount of the DIP Obligations then outstanding (including, without limitation, all principal, interest, fees, costs and expenses), (ii) the replacement of the DIP Agent with the ABL Agent (or its designee) (the "Replacement DIP Agent"), and (iii) the subordination by the Replacement DIP Agent of the Postpetition Liens on the Term Loan Primary Collateral to the prior payment in full in cash of the Obligations under the Term Loan Credit Facility. Upon consummation of the Buy-Out Option, the Term Loan Agent will provide the Replacement DIP Agent the access rights to the Term Loan Primary Collateral set forth in sections 3.3 and 3.4 of the Intercreditor Agreement. Notwithstanding the Buy Out Option outlined above or anything herein to the contrary, nothing in the Buy Out Option, the Interim Orders or this Final Order shall preclude the DIP Agent or the DIP Lenders from exercising any or all of the rights or remedies available to them under the DIP Loan Documents, the Interim Orders or this Final Order during the period preceding the ABL Agent's exercise of the Buy-Out Option, in connection with the occurrence of an Event of Default, including, without limitation, those set forth in section 18 of the Interim Orders and this Final Order. In the event of the exercise of the Buy Out Option, the Interim Orders and this Final Order will continue in full force and effect and the ABL Lenders under the ABL Credit Facility shall thereafter have all rights of the DIP Lenders under the Interim Orders and this Final Order and the DIP Loan Documents, the Interim

Orders and this Final Order shall be deemed amended *mutatis mutandis* to effectuate the transfer of such rights.

## PROVISIONS RELATING TO THE CARVE-OUT, INVESTIGATION PERIOD, REMEDIES NOTICE PERIOD & RESTRICTIONS ON THE USE OF FUNDS & CASH COLLATERAL

12.   Carve-Out. Payment of any amounts on account of the DIP Loans, the Postpetition Liens and the Superpriority Claim, or on account of the Adequate Protection Liens or the Adequate Protection Superpriority Claim, shall be subject and subordinate only to the payment of the following (collectively, the "Carve-Out"):

(a)   the statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6);

(b)   fees payable to the Clerk of this Court;

(c)   subject to the terms and conditions of the Interim Orders, this Final Order and the Budget, the unpaid and outstanding reasonable fees and expenses actually incurred on or after the Petition Date and prior to the occurrence of an Event of Default under the DIP Loan Documents or other Termination or Maturity Date under this Final Order or the DIP Loan Documents (including the DIP Demand Note), to the extent allowed and payable under sections 326, 328, 330 and 331 of the Bankruptcy Code (but excluding success, completion or other transaction fees) and the Administrative Order Establishing Procedures for Interim Compensation Pursuant to Section 331 of the Bankruptcy Code (Docket No. 94) (the "Compensation Procedures Order") (collectively, the "Priority Professional Expenses") by attorneys, accountants and other professionals retained by the Debtors and any Committee under sections 327 or 1103(a) of the Bankruptcy Code (the "Professionals"); and

(d)     the unpaid and outstanding reasonable fees and expenses actually incurred from or after the occurrence of an Event of Default or other Termination or Maturity Date under this Final Order or the DIP Loan Documents (including the DIP Demand Note), to the extent allowed and payable under sections 326, 328, 330, and 331 of the Bankruptcy Code (but excluding success, completion or other transaction fees) and the Compensation Procedures Order in an aggregate amount not to exceed $250,000.

13.     <u>Payment of Carve-Out</u>.  The Postpetition Liens and Superpriority Claim of the DIP Agent and DIP Lenders shall be subject to the prior payment in full of the Carve-Out.  The DIP Agent and the DIP Lenders shall at all times reserve against availability an amount sufficient to pay the Carve-Out, shall fund such amount upon the occurrence of an Event of Default or other Termination or Maturity Date under this Final Order or the DIP Loan Documents (including the DIP Demand Note) into a segregated account maintained for the benefit of the Professionals and, upon funding such amount, the amount so funded shall be added to and made part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Final Order, the DIP Demand Note, the DIP Loan Documents, the Bankruptcy Code and applicable law.

14.     (a) <u>Restriction on Use of Funds</u>.  The Superpriority Claim, the Postpetition Liens, the Replacement Liens, the Prepetition Liens and the Adequate Protection Obligations shall be senior to, and no proceeds of the DIP Loan, the DIP Collateral, Cash Collateral, or Prepetition Collateral may be used to pay any claims for services rendered by any of the professionals retained by the Debtors, any creditor or party in interest, any committee or any other party in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter against the DIP

Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders in connection with the challenge of any claims or liens arising under or with respect to the DIP Obligations, the Prepetition Indebtedness or the Prepetition Liens. In addition, notwithstanding anything herein to the contrary, no proceeds from the DIP Loans, the DIP Collateral, Cash Collateral, Prepetition Collateral or any portion of the Carve-Out, may be used by any of the Debtors, any Committee, and/or any trustee appointed in these Chapter 11 Cases, or any other person, party or entity to (a) pay any work, diligence, commitment or similar fee to any person for the purpose of obtaining postpetition loans or other financial accommodations pursuant to sections 364(c) or (d) of the Bankruptcy Code, or otherwise; (b) assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in such capacity, the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders, or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) commence or prosecute any action relating to any act, omission or aspect of the relationship between any of the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Lenders and the Debtors and their affiliates in such capacities; (ii) commence or prosecute any action with respect to the validity and extent of the DIP Obligations or Prepetition Indebtedness or the validity, extent, and priority of the Postpetition Liens or Prepetition Liens or the Replacement Liens; (iii) commence or prosecute any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Obligations, the Postpetition Liens, the Prepetition Indebtedness, the Prepetition Liens or the Replacement Liens; and/or (iv) commence or prosecute any action that has the effect of preventing, hindering

or delaying (whether directly or indirectly) the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders in respect of their liens and security interests in the DIP Collateral, the Cash Collateral or the Prepetition Collateral; and/or (c) pay any Claim (as such terms are defined in the Bankruptcy Code) without the prior written consent of the DIP Agent or the Prepetition Agents. Any claim incurred in connection with any activities described in subsection (b) of this section 14 shall not be paid from any portion of the DIP Loans, the DIP Collateral, Cash Collateral, Prepetition Collateral or the Carve-Out. Notwithstanding the restriction on the use of funds set forth in this section 14, the Committee shall be authorized to expend up to a maximum of $100,000 solely in connection with the investigation of the validity or enforceability of the Prepetition Indebtedness and the Prepetition Liens. [4]

(b) *Investigation Period.* Notwithstanding anything in the Interim Orders, this Final Order or in the DIP Loan Documents to the contrary, until (i) January 18, 2011, with respect to the Committee, or (ii) December 28, 2010, with respect to any other party in interest (the "Investigation Termination Date"), the Committee or any party in interest with the requisite standing, other than the Debtors, shall be entitled to investigate the validity, perfection, enforceability, and extent of the Prepetition Indebtedness and Prepetition Liens and any potential claims of the Debtors or their estates against the Prepetition Lenders arising from the Prepetition Indebtedness. If no action (or, if required, a motion seeking standing to pursue an action and describing the potential action with reasonable detail) is filed on or before the Investigation Termination Date, the Committee, all holders of claims and interests as well as all other parties in interest shall be forever barred from bringing or taking any such action, and the Debtors'

---

[4] To the extent any court order is entered directing disgorgement of any payments made by the Debtors to the Prepetition Agents or the Prepetition Lenders, either prior to or after the Petition Date, all proceeds recovered by the Debtors' estates in connection with such order(s) directing disgorgement shall be applied first to repayment of the DIP Obligations until the DIP Obligations are indefeasibly paid in full in cash and then to repayment of claims in accordance with the priority scheme set forth in the Bankruptcy Code.

stipulations made in section F shall be irrevocably binding on the Committee, all holders of claims and interests and all parties in interest, including any equity committee. If such an action is timely and properly brought (or motion for standing filed), (x) the Court may grant any appropriate relief if such claim or action is successfully prosecuted, and (y) any claim or action that is not brought (or for which standing is not sought) shall be forever barred. Absent entry of a Court Order extending the Investigation Termination Date prior to the occurrence thereof, the Investigation Termination Date shall not be extended without the written consent of the applicable Prepetition Agents.

15. <u>Prohibition on Charging or Marshalling</u>  No party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of DIP Collateral after an Event of Default under the DIP Loan Documents, or termination or breach under the DIP Loan Documents. In addition, no party shall be entitled, directly or indirectly, to charge the Carve-Out, or the DIP Collateral, whether by operation of sections 105, 506(c) or 552(b) of the Bankruptcy Code or otherwise.

16. <u>Prohibition on Granting of Additional Liens & Interests</u>.  No liens, claims, interests or priority status, other than the Carve-Out and the Permitted Priority Liens, having a lien or administrative priority superior to, *pari passu* with or junior to that of the Postpetition Liens, Replacement Liens or the Superpriority Claims granted by the Interim Orders and this Final Order, shall be granted while any portion of the DIP Obligations remains outstanding, or any commitment under the DIP Loan Documents remains in effect, without the prior written consent of the DIP Agent.

17. <u>Events of Default</u>.  Each of the following shall constitute an Event of Default: (i) failure of the Debtors to obtain an order of this Court, in form and substance reasonably

acceptable to the DIP Agent, approving procedures for the sale of all or substantially all of the Debtors' assets, by December 15, 2010; (ii) a hearing to approve the sale of all or substantially all of the Debtors' assets to a third party purchaser shall not have been held by February 28 2011; (iii) an order approving the sale of all or substantially all of the Debtors' assets to a third party purchaser shall not have been entered in the Debtors' chapter 11 cases by February 28, 2011; (iv) the Debtors shall not have filed an application with the Court to retain an investment banker (the "Investment Banker") acceptable to the DIP Agent, pursuant to an engagement letter acceptable to the DIP Agent, by December 15, 2010; (v) the Debtors shall fail to comply with the Budget (subject to Permitted Variances (defined below)); (vi) the Debtors shall fail to transmit to the DIP Agent and the Prepetition Agents and/or the DIP Agent shall not have received a final version of the Debtors' business strategy and plan on a go forward basis on or before January 14, 2010; (vii) the use by the Debtors of DIP Collateral not authorized hereby; (viii) any of the Interim Orders and/or this Final Order, shall have been stayed, amended, modified or reversed; (ix) an Event of Default under the DIP Loan Documents shall have occurred and be continuing; (x) any fraudulent act, fraudulent conduct or fraudulent omission by the Debtors; (xi) filing of an application for entry of an order approving use of DIP Collateral (other than any application related to this Final Order) and/or to obtain financing or loans secured by liens which are senior, *pari passu* or junior to the DIP Lenders' Liens on DIP Collateral without the prior written consent of the DIP Agent unless such financing or loans are used to pay the DIP Obligations in full; and/or (xii) a sale order shall be entered or a plan confirmed in any of the Debtors' Chapter 11 Cases that does not provide for payment in full in Cash of the DIP Obligations on the closing date of the sale or the effective date of the plan or an order shall be entered that dismisses any of

the Debtors' Chapter 11 Cases and which does not provide for the termination of the use of DIP Collateral and payment in full in cash of the DIP Obligations.

18. <u>Automatic Stay Modified</u>. The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified without further application or motion to, or order from the Court, to the extent necessary so as to permit the following and neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable):

(a) Whether or not a Default or an Event of Default under the DIP Demand Note, the DIP Loan Documents or a default by any of the Debtors of any of their obligations under the Interim Orders or this Final Order has occurred the DIP Agent shall have (i) the right to require all cash, checks or other collections or proceeds from DIP Collateral received by any of the Debtors to be deposited in accordance with the requirements of the DIP Loan Documents, and to apply any amounts so deposited and other amounts paid to or received by the DIP Agent and the DIP Lenders, under the DIP Loan Documents in accordance with any requirements of the DIP Loan Documents, (ii) the right to setoff funds in accounts maintained by the Debtors with any of the DIP Lenders or the DIP Agents to repay the DIP Obligations, (iii) the right (but not the requirement) to file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (iv) the right to charge and collect any interest, fees, costs and other expenses accruing at any time under the DIP Loan Documents as provided therein, and (v) the right to give the Debtors any notice provided for in any of the DIP Loan Documents, the Interim Orders or this Final Order.

(b)     In the event of a default or upon the occurrence of an Event of Default under the DIP Demand Note, the DIP Loan Documents or a default by any of the Debtors of any of their obligations under the Interim Orders or this Final Order, and without application and motion to, or order from the Court or any other court and without any interference from any Debtor or any other party in interest but subject to five (5) business days prior written notice (which may be delivered by electronic mail) (the "Remedies Notice Period") to the Debtors, their counsel, counsel to each of the Prepetition Agents, counsel to any Committee and the United States Trustee, to exercise all rights and remedies provided for in the DIP Loan Documents, the Interim Orders or this Final Order or under other applicable bankruptcy and nonbankruptcy law to the extent permitted under the DIP Loan Documents, the Interim Orders or this Final Order, including, without limitation, (i) terminate the commitments under the DIP Loan Documents, (ii) cease making DIP Loans and/or suspend or terminate the commitments under the DIP Loan Documents, (iii) terminate the Debtors' authority to use Cash Collateral, (iv) declare all DIP Obligations immediately due and payable, and/or (v) take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; provided, however, that immediately upon the occurrence of an Event of Default under the DIP Loan Documents or a default by any of the Debtors of any of their obligations under the Interim Orders, this Final Order or the DIP Loan Documents, the DIP Agent, for the benefit of the DIP Lenders, may charge interest at the default rate set forth in the DIP Loan Documents without being subject to the Remedies Notice Period.

(c)     The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Committee, any Prepetition Agent and/or the United States

Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period. The Debtors, the Committee, any Prepetition Agent and/or the United States Trustee shall have the burden of proof at any hearing on any request by them to re-impose or continue the automatic stay of section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief.

(d) Subject to the Remedies Notice Period, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be further modified, to the extent necessary, to permit the DIP Agent and/or the DIP Lenders without further application or motion to, or order from the Court, to foreclose or otherwise enforce their security interests in or liens on any or all of the DIP Collateral and/or to exercise any other default-related rights and remedies under the DIP Loan Documents, the Interim Orders or this Final Order and neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the DIP Agent and/or the DIP Lenders from exercising or enforcing such default-related rights and remedies, regardless of any change in circumstances (whether or not foreseeable). If the DIP Agent or the DIP Lenders elect to enforce their liens or security interests or exercise any other default-related remedies under applicable non-bankruptcy law pursuant to a non-judicial process or in a forum other than this Court, then the Prepetition Agents and the Prepetition Lenders shall automatically be granted relief from the automatic stay for the purpose of participating as junior lien creditors in any such process, action or proceeding, provided, however, that under such circumstances, neither the Prepetition Agents nor the Prepetition Lenders may (i) initiate or commence any such action or proceeding or (ii) in any way seek to enjoin, stay, hinder or delay any such process, action or proceeding.

(e)     If the DIP Agent and/or the DIP Lenders have elected to enforce their liens or security interests or exercise any other default-related remedies, and provided that the DIP Agent and/or the DIP Lenders, in their sole discretion, have made available to the Debtors sufficient funds to pay the reasonable and necessary costs thereof, if any, the Debtors shall cooperate with the DIP Agent and/or the DIP Lenders (as applicable) in connection with such enforcement to the extent practicable by, among other things, (i) providing at all reasonable times access to the Debtors' premises to representatives or agents of the DIP Agent and/or the DIP Lenders (including any collateral liquidator or consultant), (ii) providing the DIP Agent, the DIP Lenders and their representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the DIP Agent, the DIP Lenders or their respective representatives, (iii) performing all other obligations set forth in the DIP Loan Documents, (iv) assisting the DIP Agent and the DIP Lenders in connection with any request by the DIP Agent to sell all or any portion of the DIP Collateral, including filing on an expedited basis a 363 sale motion, and (v) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or encourage others to interfere with the DIP Agent's and/or the DIP Lenders' enforcement of rights.

(f)     This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of the Interim Orders and this Final Order and relating to the application, re-imposition or continuance of the automatic stay of section 362(a) of the Bankruptcy Code, use of Cash Collateral or other injunctive relief requested.

(g)     Upon the occurrence and during the continuance of a default or an Event of Default under the DIP Demand Note, the DIP Loan Documents or a default by any of the

Debtors of any of their obligations under the Interim Orders or this Final Order, a violation of the terms of the Interim Orders, this Final Order or any other Termination Event, the DIP Lenders shall have no further obligation to provide financing under the DIP Loan Documents or DIP Loan Agreement and the DIP Agent and the DIP Lenders shall have no obligation to permit the continued use of Cash Collateral.

(h)     Upon the occurrence and during the continuance of a default or an Event of Default under the DIP Demand Note, the DIP Loan Documents or a default by any of the Debtors under the terms of the Interim Orders or this Final Order, the DIP Lenders may at all times continue to collect and sweep cash as provided herein.

(i)     The automatic stay pursuant to section 362 of the Bankruptcy Code, to the extent applicable, shall be deemed terminated to allow the ABL Agent to apply funds held in internal accounts as collateral (which funds shall not constitute Cash Collateral or DIP Collateral unless and until remitted to the Debtors) toward (i) any liability for letters of credit drawn post-petition, (ii) any liability for the Debtors' credit card balances, and (iii) payment of the ABL Agent's professional fees and expenses (subject to compliance with Section 11(e) of this Final Order).

## ADDITIONAL PROVISIONS COMMON TO DIP FINANCING AND USE OF CASH COLLATERAL AUTHORIZATION

19.     <u>Limitation on Section 506(c) Claims</u>.  No costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases or any subsequent cases at any time shall be charged against, and no person may seek to charge any costs or expenses of administration against the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders, any of their respective claims, the DIP Collateral or the Prepetition Collateral pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code or otherwise, without the prior written

consent, as applicable, of the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders. No action, inaction or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders shall be deemed to be or shall be considered evidence of any alleged consent to a charge against the DIP Collateral or the Prepetition Collateral.

20. <u>No Marshalling</u>. The DIP Agent and the DIP Lenders shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the DIP Collateral.

21. <u>Equities of the Case Waiver</u>. The DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. No person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders with respect to proceeds, product, offspring or profits of any of the DIP Collateral or the Prepetition Collateral.

22. <u>Additional Perfection Measures</u>. The Postpetition Liens and the Replacement Liens were perfected by operation of law immediately upon entry of the First Interim Order (which perfection was re-affirmed pursuant to the other Interim Orders and is further re-affirmed by this Final Order). None of the Debtors, the DIP Agent, the Prepetition Agents or the Prepetition Lenders shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with

respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the Postpetition Liens or the Replacement Liens.

(a)     If the DIP Agent or the Prepetition Agents, each in its sole discretion, chooses to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens:

i.     all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of the First Interim Order; and

ii.     no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b)     In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Agent or the Prepetition Agents, may, each in its sole discretion, choose to file a true and complete copy of the First Interim Order and/or any of the other Interim Orders or this Final Order in any place at which any such instruments would or could be filed, together with a description of the DIP Collateral or the Prepetition Collateral, and such filing by the DIP Agent or the Prepetition Agents shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of the First Interim Order.

23.     <u>Application of Collateral Proceeds</u>.  To the extent required by the Interim Orders, this Final Order and/or the DIP Loan Documents, after an Event of Default, the Debtors are hereby authorized and directed to remit to the DIP Agent or the DIP Lenders, as the case may be,

one-hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral (net of any trust fund, sales or similar taxes comprising any portion of such collections), including, but not limited to, all accounts receivable collections, proceeds of sales of inventory, fixed assets, and any other assets, including sales in and outside the ordinary course of business, and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Agent or the DIP Lenders to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the Interim Orders, this Final Order and the DIP Loan Documents to the DIP Obligations.

24. <u>Access to Collateral</u>.

(a) Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the DIP Lenders contained in the Interim Orders, this Final Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon five (5) business days' written notice to the landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that a default or an Event of Default under the DIP Demand Note, the DIP Loan Documents or a default by any of the Debtors of any of their obligations under the Interim Orders or this Final Order, a violation of the terms of the Interim Orders or this Final Order has occurred and is continuing, the DIP Agent or the DIP Lenders (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor, and the DIP Agent or the DIP Lenders (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of any of the

Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses, in either the case of subsections (i) or (ii) of this section without interference from lienholders or licensors thereunder, subject to such lienholders or licensors rights under applicable law. Nothing herein shall require the Debtors, the DIP Agent or the DIP Lenders to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent and the DIP Lenders in this section nor shall anything in the Interim Orders or this Final Order be deemed to be an assumption, assignment or rejection of any lease or license.

25.     <u>Cash Management Systems</u>.  The Debtors are authorized and directed to maintain their cash management system in a manner consistent with the DIP Demand Note, the DIP Loan Documents, the Interim Orders, this Final Order and the Order dated November 14, 2010 (Docket No. 38) under 11 U.S.C. §§ 105, 363, 1107 and 1108 Authorizing (i) Maintenance of Certain & Existing Bank Accounts, (ii) Continued Use of Business Forms, (iii) Continued Use of Existing Cash Management System & (iv) Waiver of Section 345(b) Deposit & Investment Requirements (the "<u>Cash Management Order</u>"), <u>provided</u>, <u>however</u>, that the Cash Management Order is at all times on terms and conditions acceptable to the DIP Agent and such order is not inconsistent with the terms specified herein or the DIP Demand Note or the DIP Loan Documents.

26.     <u>Budget Maintenance; Financial Reporting; Permitted Variances</u>.

(a)     The Budget shall at all times be in form and substance acceptable to the DIP Agent and approved by the DIP Agent in its sole discretion in writing.  The Debtors shall provide the DIP Agent and the Committee with a weekly Budget containing detailed line items of receipts, outstanding loans and expenditures, and shall provide updates to the Budget on a weekly basis and financial reporting with respect to the Debtors in accordance with the terms of the DIP Demand Note.  The Debtors shall provide the DIP Agent and the Committee with a rolling thirteen (13) week cash forecast of receipts and disbursements, which forecast shall be updated weekly and delivered to the DIP Agent no later than Wednesday of each week.

(b)     On Wednesday of each week, the Debtors shall provide to the DIP Agent and the Committee a report, in form and substance acceptable to the DIP Agent in its sole and absolute discretion, comparing the Debtors actual financial performance against the Budget for (i) the immediately preceding four week period on a cumulative basis, and (ii) the immediately preceding week.

(c)     The Debtors shall comply with the Budget in all respects, provided however, that the Debtors shall be deemed to be in compliance with the Budget so long as (i) aggregate receipts are not less than 85% of the aggregate receipts projected in the Budget, and (ii) disbursements (other than disbursements for professional fees) are not greater than 115% of the disbursement projected in the Budget, in each case tested on a line item basis and cumulatively for the immediately preceding four week period (or from the Petition Date to the extent such period is less than four weeks) (such variances, the "Permitted Variances").

(d)     The DIP Agent and the DIP Lenders shall have no obligation with respect to the Debtors' use of the proceeds of the DIP Loans or DIP Collateral, and shall not be obligated to ensure or monitor the Debtors' compliance with the Budget or to pay (directly or indirectly

from their DIP Collateral) any expenses incurred or authorized to be incurred pursuant to the Budget. Funds borrowed under the DIP Facility and DIP Collateral used under the Interim Orders and this Final Order shall be used by the Debtors in accordance with the Interim Orders and this Final Order. The DIP Agent's and the DIP Lenders' consent to the Budget including the rolling thirteen (13) week cash forecasts shall not be construed as a consent to the use of any DIP Collateral or a commitment to continue to provide DIP Loans after the occurrence of an Event of Default or beyond the Termination Date, regardless of whether the aggregate funds shown on the Budget have been expended.

27.     The Budget may be modified or supplemented from time to time only by written agreement of the DIP Agent and the Debtors without the need of further notice, hearing or order of this Court. A copy of any modifications or supplements will be provided by the Debtors to counsel for the Prepetition Agents, counsel for the Committee and the United States Trustee.

28.     Delivery of Documentation.  The Debtors (and/or their legal or financial advisors) shall deliver simultaneously to the DIP Agent, counsel to the DIP Agent, or any financial advisor to the DIP Agent, and counsel to the Committee, all financial reports, budgets, forecasts, and all other legal or financial documentation, pleadings, and/or filings (together, the "Documentation") that are either (i) required to be provided (by the Debtors and/or their legal or financial advisors) to the DIP Agent, the DIP Lenders, and/or the DIP Agents' legal and financial advisors pursuant to the DIP Loan Documents, (ii) requested by the DIP Agent and/or the DIP Lenders (or their legal and financial advisors), or (iii) requested by the Committee (or its legal and financial advisors), subject to applicable confidentiality restrictions.  Without limiting the generality of the foregoing, subject to applicable confidentiality restrictions, the Debtors shall simultaneously provide to the Committee any and all documents and information provided by the Debtors to the

DIP Agent and ABL Agent (for the benefit of their respective lenders) including, without limitation, copies of all letters of intent concerning the disposition of their assets pursuant to section 363 of the Bankruptcy Code or otherwise, alternative financing, hiring, termination or resignation of management level personnel, and all other information impacting these cases or the Debtors' business operations.

29.  <u>Access to Books & Records</u>.  The Debtors (and/or their legal and financial advisors) will (i) keep proper books, records and accounts in accordance with GAAP as historically applied by the Debtors in which full, true and correct entries shall be made of all dealings and transactions in relation to its business and activities, (ii) cooperate, consult with, and provide to the DIP Agent, DIP Lenders, Prepetition Agents and/or Prepetition Lenders all such information as required or allowed under the DIP Loan Documents, the provisions of the Interim Orders and this Final Order or that is afforded to the Committee and/or the Committee's respective legal or financial advisors upon written request by the DIP Agent, (iii) permit upon one (1) business days notice, representatives of the DIP Agent, DIP Lenders, Prepetition Agents and/or the Prepetition Lenders to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired, and (iv) permit representatives of the DIP Agent, DIP Lenders, Prepetition Agents and/or Prepetition Lenders to consult with and advise the Debtors' management on matters concerning the general status of the Debtors' business, financial condition and operations.

30.    <u>DIP Agent & DIP Lenders Not Responsible Persons</u>.  In (a) making the decision to make the DIP Loans; (b) administering the DIP Loans; (c) extending other financial accommodations to the Debtors under the DIP Demand Note and the DIP Loan Documents; and (d) making the decision to collect the indebtedness and obligations of the Debtors, neither the DIP Agent nor the DIP Lenders shall be considered to be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law, including without limitation, any environmental law (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal, state or local law, statute or ordinance).

31.    <u>Successors and Assigns</u>.  The DIP Demand Note, the DIP Loan Documents, the provisions of the Interim Orders and the provisions of this Final Order shall be binding upon and inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders, and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code.  The provisions of the Interim Orders and this Final Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest.

32.    <u>Binding Nature of Agreement</u>.  Each of the DIP Loan Documents, including the DIP Demand Note, to which any of the Debtors are or will become a party shall constitute legal, valid, and binding obligations of the Debtors party thereto, enforceable in accordance with their terms.  The DIP Loan Documents, including the DIP Demand Note (and any amendment thereto necessary to reflect the terms of this Final Order), have been or will be properly executed and

delivered to the DIP Agent or the DIP Lenders by the Debtors, no later than one day after entry of this Final Order. Except as otherwise expressly provided herein, the rights, remedies, powers, privileges, liens, and priorities of the DIP Agent and the DIP Lenders provided for in the Interim Orders, this Final Order and in the DIP Demand Note and the DIP Loan Documents shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code unless and until the DIP Obligations have first been indefeasibly paid in full in cash and completely satisfied and the commitments terminated in accordance with the DIP Loan Documents.

33. <u>Subsequent Reversal or Modification</u>. This Final Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lenders all protections afforded by section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by any of the Debtors to the DIP Agent and the DIP Lenders prior to the date of receipt by the DIP Agent of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized, created or re-affirmed under this Final Order or pursuant to the DIP Loan Documents prior to the date of receipt by the DIP Agent of written notice of the effective date of such action. Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by any of the Debtors to the DIP Agent or the DIP Lenders, prior to written notice to the DIP Agent of the effective date of such action, shall be governed in all respects by the original provisions of this Final Order, and the DIP Agent

and the DIP Lenders shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liability.

34.    <u>Collateral Rights</u>.  In the event any party holding a lien or security interest in DIP Collateral junior and/or subordinate to the Postpetition Liens in such Collateral receives or is paid the proceeds of such DIP Collateral or receives any other payment with respect thereto from any other source, prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Loan Documents and termination of the commitment in accordance with the DIP Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral in trust for the DIP Lenders and shall immediately turnover such proceeds for application to the DIP Obligations under the DIP Loan Documents in accordance with the DIP Loan Documents, the Interim Orders and this Final Order until all DIP Obligations are indefeasibly paid in full in cash.

35.    <u>Injunction</u>.  Except as provided in the DIP Loan Documents and/or the Interim Orders and/or this Final Order, the Debtors shall be enjoined and prohibited from, at any time during these Chapter 11 Cases, granting liens on the DIP Collateral or any portion thereof to any other parties, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to, *pari passu* with or junior to the liens granted to the DIP Agent, for the benefit of the DIP Lenders except in accordance with the DIP Demand Note, the DIP Loan Documents, the Interim Orders and this Final Order.

36.    <u>No Waiver</u>.  This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders may have to bring or be heard on any matter brought before this Court.

37. Sale/Conversion/Dismissal.

(a) No order providing for either the sale of the ownership of the stock of the Debtors or the sale of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code to a party shall be entered by the Court, absent a hearing on notice to the DIP Agent, unless in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to indefeasibly pay in full in cash, and completely satisfy, in cash, all DIP Obligations and such DIP Obligations are indefeasibly paid in full in cash and the commitments under the DIP Loan Documents, the Interim Orders and this Final Order are terminated in accordance therewith on the closing date of such sale.

(b) No order dismissing or converting these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code, or appointing a chapter 11 trustee or an examiner with expanded powers, shall be entered absent a hearing on notice to the DIP Agent, and no motion shall be filed by any of the Debtors for any such relief, unless and until (i) the DIP Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance therewith or (ii) the DIP Agent expressly consents in writing. If an order dismissing or converting any of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide that (i) the Postpetition Liens and the Superpriority Claim granted hereunder and in the DIP Loan Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in the Interim Orders, this Final Order and the DIP Loan Documents until all DIP Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance with the DIP

Loan Documents and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the Postpetition Liens and the Superpriority Claim.

38. <u>Limits on DIP Agent's & DIP Lenders' Liability.</u> Nothing in the Interim Orders, this Final Order or in any of the DIP Loan Documents or any other documents related to this transaction, including the DIP Demand Note, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or the DIP Lenders, acting in such capacities, of any liability for any claims arising from any or all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

39. <u>Investment Banker Access.</u> The Prepetition Agents and the Committee shall have unfettered access to communicate, in person, by telephone, by email or otherwise, with the Investment Banker, and the Investment Banker shall make all information available to each Prepetition Agent and the Committee that the Investment Banker makes available to the Debtors or any Prepetition Agent or Prepetition Lender, provided however, that the Investment Banker shall only take direction from the Debtors and shall not disclose any privileged or confidential communications between the Investment Banker and the Debtors.. The obligation to provide access and make information available under this paragraph 39 shall terminate with respect to any Prepetition Agent upon submission of a bid from that Prepetition Agent.

40. <u>Priority of Terms.</u> To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of the Interim Orders or this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Demand Note or the DIP Loan

Documents, the terms and provisions of the Interim Order and this Final Order shall govern. The Interim Orders shall remain in full force and effect, except to the extent any provision or term thereof is specifically amended by or superceded by a provision or term of this Final Order.

41.  <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

42.  <u>Survival</u>.  Except as otherwise provided herein, (a) the protections afforded to the DIP Agent and the DIP Lenders under the Interim Orders and this Final Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of these Chapter 11 Cases or (ii) converting any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the Postpetition Liens, the Replacement Liens, the Superpriority Claim and the Adequate Protection Obligations shall continue in these Chapter 11 Cases, in any Successor Case or after any such dismissal or conversion.  Except as otherwise provided herein, the Postpetition Liens, the Replacement Liens, the Superpriority Claim, the Adequate Protection Obligations and the Carve Out shall maintain their priorities as provided in the Interim Orders and this Final Order, and the DIP Loan Documents, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, or by any other act or omission until all DIP Obligations are indefeasibly paid in full in cash and completely satisfied, and the commitments under the DIP Loan Documents are terminated in accordance therewith.

43.  <u>Adequate Notice</u>.  The notice given by the Debtors of the Final Hearing was given in accordance with Bankruptcy Rules 2002 and 4001 (c)(2), and the local rules of this Court,

and, under the circumstances was adequate and sufficient. No further notice of the request for the relief granted at the Final Hearing is required.

44. <u>Entry of Final Order; Effect</u>. This Final Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Final Order on the Court's docket in these Chapter 11 Cases.

45. <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Final Order.

46. <u>Binding Effect of Final Order</u>. The terms of this Final Order shall be binding on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

47. <u>Reservation of Rights</u>. Notwithstanding anything to the contrary set forth herein, the entry of this Final Order is without prejudice to the rights of the ABL Agent and/or the ABL Lenders to object to entry of any subsequent orders amending or replacing this Final Order on any basis, including, without limitation, lack of adequate protection, and the consent of the ABL Agent and the ABL Lenders to the relief granted in this Final Order shall not in any way be construed as an indication of consent to a DIP Facility other than the DIP Facility approved herein, or as an indication of consent to any extension or modification of the DIP Facility approved herein. Nothing herein constitutes a finding that the interest of the ABL Agent and the ABL Lenders are adequately protected within the meaning of Section 364(d) of the Bankruptcy Code.

Dated: Wilmington, Delaware
      December 17, 2010

                                                        _____
                                              THE HONORABLE CHRISTOPHER S. SONTCHI
                                              UNITED STATES BANKRUPTCY JUDGE