# Exhibit 1

## Bidding Procedures

# BIDDING PROCEDURES

## Bidding Process

The bidding procedures set forth herein (the "Bidding Procedures") to be employed with respect to the proposed sale of substantially all of the assets (the "Sale") of Consolidated Horticulture Group LLC ("Consolidated"), New Hines Parent Company LLC ("Hines Parent"), and Hines Nurseries LLC ("Hines") (collectively, the "Sellers" or the "Debtors") describe, among other things, the assets available for sale, the manner in which prospective bidders may gain access to or continue to have access to due diligence materials concerning the Assets (as defined below), the manner in which bidders and bids may become Qualified Bidders (as defined below) and Qualified Bids (as defined below), respectively, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder (as defined below), and the approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") thereof (collectively, the "Bidding Process"). The Sellers intend to consult with the following parties (and their advisors) throughout the Bidding Process[1]: (i) the Official Committee of Unsecured Creditors appointed in the chapter 11 cases of Consolidated Horticulture Group LLC., et al. (jointly administered under Case No. 10-13308) (the "Creditors' Committee"); (ii) Black Diamond Commercial Finance, L.L.C. as administrative agent (the "DIP Agent") under that certain Revolving Loan Promissory Note (amended, supplemented, restated or otherwise modified from time to time) (the "DIP Note"), by and among Hines, in its capacity as borrower and Consolidated and Hines Parent, in their capacities as guarantors, and the other lenders party thereto from time to time (each a "DIP Lender" and, collectively, the "DIP Lenders"); (iii) Black Diamond Commercial Finance, L.L.C., as administrative agent (in such capacity, the "Term Loan Agent") under the Term Loan and Security Agreement dated as of January 9, 2009, by and among Hines as borrower, and the other lenders from time to time parties thereto (the "Term Loan Lenders"); (iv) Bank of America, N.A., as agent (in such capacity, the "ABL Agent") under the Loan and Security Agreement dated as of January 9, 2009, by and among Hines, as borrower, and the other lenders from time to time parties thereto (the "ABL Lenders") and (v) Black Diamond Commercial Finance, L.L.C., as administrative agent (in such capacity, the "Sub Loan Agent") under the Subordinated Loan and Security Agreement dated as of January 9, 2009, by and among Hines, as borrower, and the other lenders from time to time parties thereto (the "Sub Loan Lenders") (together with the Term Loan Agent and the ABL Agent, the "Prepetition Agents"). In the event that the Sellers and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

---

[1] For the avoidance of doubt the Debtors shall not consult with any party who submits a bid or proposal to acquire the Assets (as defined below), and such party shall be treated as a Potential Bidder for purposes of these Bidding Procedures.

## Assets To Be Sold

The Sellers are offering for sale, in one or more transactions (the "Transactions"), substantially all of the Sellers' assets (the "Assets").[2] A copy of a form purchase agreement (the "Model Purchase Agreement") to be used in connection with the submission of a bid for the Assets is attached to the motion seeking authority to sell the Assets.

## "As Is, Where Is"

The sale of the Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description by the Sellers, their agents, or estates, except to the extent set forth in the purchase agreement of the Successful Bidder (as defined below).

## Free Of Any And All Claims And Interests

All of the rights, title and interests of the Debtors in and to the Assets, or any portion thereof, to be acquired will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Claims and Interests") to the extent permitted by sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code") and other applicable law, such Claims and Interests to attach to the proceeds of the sale of such Assets (without prejudice to any claims or causes of action regarding the priority, validity or enforceability thereof), except to the extent otherwise set forth in the relevant purchase agreement of the Successful Bidder.

## Participation Requirements

Unless otherwise ordered by the Bankruptcy Court, or as otherwise determined by the Sellers (in consultation with the Creditors' Committee, the DIP Agent and the Prepetition Agents, together the "Consultation Parties"), in order to participate in the Bidding Process, prior to the Bid Deadline (as defined below), each person who wishes to participate in the Bidding Process (a "Potential Bidder") must deliver to the Debtors (who shall promptly distribute copies to the Consultation Parties) the following:

(a) an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to a Potential Bidder) in form and substance satisfactory to the Sellers, and which shall inure to the benefit of any purchaser of Assets. In the event that the Potential Bidder has already entered into a confidentiality agreement with the Sellers, it must provide a statement to the Sellers (i) agreeing that its obligations under such agreement shall inure to the benefit of any purchaser of the Assets; and (ii) waiving any of its rights under such confidentiality agreement that are in conflict with the Bidding Procedures or that would otherwise

---

[2] All references to the Assets in the Bidding Procedures shall, as the context may require, mean all of the Assets or any portion of the Assets.

2

prohibit disclosures regarding the Potential Bidder, or any Transactions it may propose; and

(b) current audited financial statements and latest unaudited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements and latest unaudited financial statements of the equity holders of the Potential Bidder or any other party who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow the Sellers and the Consultation Parties and their respective financial advisors, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Transactions.

A Potential Bidder (i) that has delivered the documents described above to the Sellers, (ii) whose financial information and credit quality support or enhancement demonstrate in the Sellers' judgment, after consultation with their counsel and financial advisors and the Consultation Parties, the financial capability of the Potential Bidder to consummate the Transactions, (iii) that has executed a confidentiality agreement, as described above, and (iv) that the Sellers determine in their reasonable business judgment, after consultation with their counsel and financial advisors and the Consultation Parties, is likely (based on availability of financing, experience and other considerations) to be able to consummate the Transactions, will be deemed a "Qualified Bidder".

Subject to the satisfaction of the applicable requirements set forth below for submission of a Qualified Bid (as defined below), each of the DIP Agent, the ABL Agent, the Term Loan Agent, and the Sub Loan Agent, for itself and on behalf of the DIP Lenders, the ABL Lenders, the Term Loan Lenders, and the Sub Loan Lenders, respectively, shall be deemed to be a Qualified Bidder for all purposes in connection with these Bidding Procedures and, pursuant to section 363(k) of the Bankruptcy Code, shall be permitted, but not compelled, to credit bid as to the Assets constituting such bidder's collateral up to the full amount of such bidder's secured claims (subject to any existing intercreditor agreements) against the Purchase Price at the Auction (each as defined below).

As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Sellers will determine, in consultation with the Consultation Parties and will notify the Potential Bidder, if such Potential Bidder is a Qualified Bidder. At the same time that the Sellers notify the Potential Bidder that it is a Qualified Bidder, the Sellers will allow the Qualified Bidder to begin or continue to conduct due diligence with respect to the Assets as provided in the following paragraph.

## Due Diligence

The Sellers shall, in their reasonable business judgment, and subject to competitive and other business considerations, afford each Qualified Bidder and any person seeking to become a Qualified Bidder that has executed a confidentiality agreement with the Sellers such due diligence access to materials and information relating to the Assets as the Sellers deem appropriate after consultation with the Consultation Parties. Due diligence access may include

3

management presentations as may be scheduled by the Sellers, access to electronic data rooms, on-site inspections, and other matters which a Qualified Bidder may reasonably request and as to which the Sellers, in their reasonable business judgment, may agree. The Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. No additional due diligence for any party will continue after the Bid Deadline (as defined below) unless agreed to by the Sellers in consultation with the Consultation Parties. The Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. Neither the Sellers nor any of their affiliates (or any of their respective representatives) will be obligated to furnish any information relating to the Assets to any person other than to Qualified Bidders. The Sellers make no representation or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in the Purchase Agreement or in any other definitive agreement(s) with any Successful Bidder executed and delivered by Sellers.

## Bid Deadline

A Qualified Bidder that desires to make a bid will deliver written copies by hand delivery, overnight courier, mail, facsimile and/or email of its bid to counsel to the Debtors: Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Facsimile: (302) 652-4400 (Attention: Laura Davis Jones and David M. Bertenthal) so as to be received not later than **February 23, 2011 at 12:00 p.m. Noon (ET)** (as may be extended as set out below, the "Bid Deadline").

The Debtors shall, no later than 10:00 a.m. (ET) on the day following receipt, distribute copies of any bids to the following parties: (i) counsel to the Creditors' Committee: Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068, Facsimile: (973) 597-2465 (Attention: Sharon L. Levine and Wojciech F. Jung) and Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801, Facsimile: (302) 425-6464 (Attention: Alan Michael Root and David W. Carickhoff); (ii) counsel to the DIP Agent, the Term Loan Agent and the Sub Loan Agent: Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022, Fax: (212) 593-5955 (Attention: Adam C. Harris and Kathryn L. Turner) and Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Facsimile: (302) 467-4450 (Attention: Richard S. Cobb and Landon Ellis); and (iii) counsel to the ABL Agent: Latham & Watkins LLP, 233 S. Wacker Drive, Suite 5800, Chicago, Illinois 60606, Facsimile: (312) 876-9767 (Attention: J. Douglas Bacon and Alice D. Burke) and Edwards Angell Palmer & Dodge LLP, 919 N. Market Street, Suite 1500, Wilmington, Delaware 19801, Facsimile: (888) 325-9533 (Attention: Stuart M. Brown and Michelle E. Marino). The Sellers, after consultation with the Consultation Parties, may extend the Bid Deadline once or successively, but they are not obligated to do so.

## Qualified Bid

A bid submitted will be considered a Qualified Bid if the bid is submitted by a Qualified Bidder, pursuant to the previous paragraph and complies with all of the following (a "Qualified Bid"):

4

(a) it includes a letter stating that the bidder's offer is irrevocable until the approval of the Successful Bidder and, if applicable, the Alternate Bidder (as defined below), at the Sale Hearing (as defined below) provided that if such bidder is selected as the Successful Bidder or the Alternate Bidder, its offer shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Alternate Bidder, and (ii) (x) with respect to the Successful Bidder only, 30 days after the Sale Hearing, subject to further extensions as may be agreed to under the applicable purchase agreements and (y) with respect to the Alternate Bidder only, the Alternate Bid Expiration Date (as defined below);

(b) it includes a duly authorized and executed purchase agreement, including the purchase price for the Assets expressed in U.S. Dollars (the "Purchase Price"), together with all exhibits and schedules thereto, and the other ancillary agreements as described in such purchase agreement and such additional ancillary agreements as may be required by the bidder with all exhibits and schedules thereto (or term sheets that describe the material terms and provisions of such agreements), as well as copies of such materials marked to show those amendments and modifications to the Model Purchase Agreement ("Marked Agreements") and such ancillary agreements (the "Marked Ancillary Agreements") (in each case to the extent applicable) and the proposed orders to approve the Sale by the Bankruptcy Court;

(c) it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Sellers, in consultation with the Creditors' Committee, the DIP Agent and the Prepetition Agents, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Marked Agreements;

(d) it is not conditioned on (i) the completion or outcome of unperformed due diligence by the bidder and/or (ii) obtaining financing;

(e) it fully discloses the identity of each entity that will be bidding for the Assets or otherwise sponsoring or participating in connection with such bid, and the complete terms of any such participation;

(f) it includes an acknowledgment and representation that the bidder will assume the Sellers' obligations under the executory contracts and unexpired leases proposed to be assigned pursuant to the Marked Purchase Agreements (or identifies with particularity which of such contracts and leases the bidder wishes not to assume, or alternatively which additional executory contracts or unexpired leases the bidder wishes to assume), contains full details of the bidder's proposal for the treatment of related cure costs; and it identifies with particularity any executory contract or unexpired lease the assumption and assignment of which is a condition to closing;

(g) it includes an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review,

5

investigation and/or inspection of any documents and/or the Assets in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Marked Agreements or the Marked Ancillary Agreements; and (iv) is not entitled to any expense reimbursement or break-up fee in connection with its bid;

(h) it provides a sufficient amount of cash as a component of the purchase price to (i) repay all obligations owed by the Debtors under the DIP Note, (ii) pay all accrued and unpaid professional fees, plus the sum of $250,000 for post-closing professional fees (to the extent provided in the budget and the Interim Order (as defined in the DIP Note) to be utilized in accordance with the professional fee carve-out and to be funded into a segregated escrow account for this purpose), (iii) to the extent not assumed by the Successful Bidder, pay all postpetition accrued and unpaid ordinary course obligations of the Sellers to the extent provided in the budget, in each case calculated as of the closing, and (iv) satisfy all accrued and unpaid success or incentive fees incurred by the Debtors as part of the Bid and payable to Candlewood Partners, LLC and FTI Consulting, Inc. in accordance with the orders of the Bankruptcy Court approving such firms' compensation by the Debtors;

(i) it includes evidence, in form and substance reasonably satisfactory to Sellers, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Marked Agreements and Marked Ancillary Agreements;

(j) it is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Sellers), certified check or such other form acceptable to the Sellers, payable to the order of the Sellers (or such other party as the Sellers may determine) in U.S. Currency in an amount equal to 10% of the Purchase Price (the "Good Faith Deposit") to be dealt with as provided for under "Good Faith Deposit" herein[3];

(k) it includes evidence of the Potential Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Potential Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Sellers and assigned or subleased to the Potential Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases;

(l) it contains other information reasonably requested by the Sellers in consultation with the Consultation Parties; and

(m) it is received by the Bid Deadline.

---

[3] In the event of a credit bid, neither the DIP Agent, the ABL Agent, the Term Loan Agent nor the Sub Loan Agent shall be required to post a Good Faith Deposit.

In advance of the Auction (as defined below), the Sellers shall notify all Qualified Bidders in writing as to whether or not any bids constitute Qualified Bids (and, with respect to each Qualified Bidder that submitted a bid, whether such Qualified Bidder's bid constitutes a Qualified Bid), and shall provide any Qualified Bidder with a copy of any other Qualified Bid received by the Sellers.

In the case of a credit bid submitted by either of the DIP Agent, the ABL Agent, the Term Loan Agent, or the Sub Loan Agent, for itself and on behalf of the DIP Lenders, the ABL Lenders, the Term Loan Lenders, or the Sub Loan Lenders, respectively, such bid shall only be construed as a Qualified Bid if such credit bidder has complied with subsections (a), (b), (d), (e), (f), (g), (h) (other than clause (i) thereof in the case of a credit bid by the DIP Agent), (k), (l) and (m) immediately above, and in addition has provided a cash component sufficient to pay in full any indebtedness secured by senior liens on the Assets to be acquired.

The Sellers may determine, in their reasonable business judgment, after consultation with the Consultation Parties, to waive any non-material failure of a Qualified Bidder to comply with one or more of the requirements specified herein and deem such bid to be a Qualified Bid.

### Aggregate Bids

The Sellers, after consultation with the Consultation Parties, may aggregate separate bids from unaffiliated persons to create one "Qualified Bid" from a "Qualified Bidder"; provided that all bidders shall remain subject to the provisions of 11 U.S.C. § 363(n) regarding collusive bidding. For the avoidance of doubt, the Sellers may consider bids on portions of the Assets which taken together provide a higher or better return to the Sellers' estates than a single bid for all or substantially all of the Assets.

### Evaluation Of Competing Bids

A Qualified Bid will be valued in the Sellers' discretion, in consultation with their advisors and the Consultation Parties, based upon several factors including, without limitation, items such as the purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder, including any assumed pension liabilities) provided by such bid, the claims likely to be created by such bid in relation to other bids, the counterparties to such Transactions, the proposed revisions to the Model Purchase Agreement, the effect of the Transactions on the value of the ongoing businesses of the Sellers (including ongoing relationships with customers and suppliers), other factors affecting the speed and certainty of closing, and value of the Transactions (including any regulatory approvals required to close the Transactions), the assets included or excluded from the bid, the estimated number of employees of the Sellers to be offered post-closing employment by the Qualified Bidder and any proposed measures associated with their continued employment, the transition services required from the Sellers post-closing and any related restructuring costs, and the likelihood and timing of consummating such transactions, each as determined by the Sellers, in consultation with their advisors and the Consultation Parties.

7

## Auction

If the Sellers receive more than one Qualified Bid, the Sellers shall conduct an auction (the "Auction") of the Assets, which shall be transcribed or recorded on video to the extent required under Delaware local practice, at **10:00 a.m. (ET) on February 25, 2011**, at the offices of Pachulski Stang Ziehl & Jones LLP, located at 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, or such other location as shall be timely communicated to all entities entitled to attend the Auction, which Auction may be cancelled or adjourned in accordance with these Bidding Procedures. The Auction shall run in accordance with the following procedures:

(a) Only (i) the Sellers, (ii) the Consultation Parties (and the advisors to each of the foregoing and members of the Creditors' Committee), (iii) any Qualified Bidder that has timely submitted a Qualified Bid, (iv) any creditor of the Debtors that has provided written notice to the Debtors' counsel at least five (5) Business Days in advance of the Auction of his, her or its intent to attend the Auction, and (v) representatives of the Office of the U.S. Trustee, shall be permitted to attend the Auction and only the Qualified Bidders will be entitled to make any subsequent bids at the Auction.

(b) Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed Transactions.

(c) At least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Sellers whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the approval of the Successful Bidder at the Sale Hearing (as defined below) and (ii) if such bidder is selected as an Alternate Bidder (as defined below), the Alternate Bid Expiration Date. At or prior to the Auction, the Sellers will identify to all Qualified Bidders who have informed the Sellers of their intent to participate in the Auction, the Qualified Bid or combination of Qualified Bids which the Sellers believe, in their reasonable business judgment, after consultation with the Consultation Parties, is the highest or otherwise best offer (the "Starting Bid").

(d) All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attend the Auction in person.

(e) The Sellers, after consultation with their counsel and financial advisors and the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules

8

are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court, and (ii) disclosed and made applicable to each Qualified Bidder at the Auction.

(f) Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Sellers determine, in consultation with their advisors and the Consultation Parties, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each incremental bid at the Auction shall provide net value to the estate of at least $250,000 over the Starting Bid or the Leading Bid, as the case may be, provided that the Sellers, in consultation with the Consultation Parties, shall retain the right to modify the increment requirements up or down at the Auction. After the first round of bidding and between each subsequent round of bidding, in each instance after consultation with the Consultation Parties, the Sellers shall announce the bid or combination of bids (and the value of such bid(s)) that they believe to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.

Selection Of Successful Bid

Prior to the conclusion of the Auction, the Sellers in consultation with their advisors and the Consultation Parties will (a) review each Qualified Bid and evaluate each Qualified Bid (as the same may have been amended or modified at the Auction) as set forth in the section titled "Evaluation Of Competing Bids" herein, (b) identify the highest or otherwise best offer or offers for the Assets received at the Auction (one or more such bids, collectively the "Successful Bid" and the bidder(s) making such bid, collectively, the "Successful Bidder") and (c) communicate to the Qualified Bidders the identity of the Successful Bidder, the Alternate Bidder (as defined below), if any, and the details of the Successful Bid and Alternate Bid (as defined below), if any. The determination of the Successful Bid and Alternate Bid as set forth herein, after consultation with the Consultation Parties, at the conclusion of the Auction, shall be final subject to approval by the Bankruptcy Court.

The Sellers will sell the Assets to the Successful Bidder pursuant to the terms of the Successful Bid (or, under certain circumstances described herein, the Alternate Bidder) upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing.

If the Debtors receive only one Qualified Bid, that bid will be deemed the Successful Bid and the Sellers after consultation with the Consultation Parties may proceed immediately to have that Successful Bid approved by the Bankruptcy Court at the Sale Hearing (as defined below) and forego the Auction.

9

### Sale Hearing

The sale hearing to authorize the Sellers to enter into agreements with respect to the Successful Bid (the "Sale Hearing") will be held before the Honorable Judge Christopher S. Sontchi at 824 North Market Street, Wilmington, Delaware 19801 on **February 28, 2011 at 11:00 a.m. (ET)**. The Sale Hearing may be adjourned or rescheduled by the Sellers without further notice by an announcement of the adjourned date at the Sale Hearing. At the Sale Hearing, the Sellers will seek approval of the Successful Bid, and, at the Sellers' election, the next highest or best Qualified Bid (the "Alternate Bid" and, such bidder, the "Alternate Bidder"). The Sellers' presentation to the Bankruptcy Court of the Successful Bid, and, if applicable, the Alternate Bid will not constitute the Sellers' acceptance of either of such bids, which acceptance will only occur upon the latest approval of such bids to be delivered by the Bankruptcy Court at the Sale Hearing. Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Sellers will be authorized, but not directed, to effectuate a Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court. The Alternate Bid shall remain open until the earlier of the fortieth (40th) calendar day following the conclusion of the Sale Hearing (the "Alternate Bid Expiration Date") or the consummation of the Sale. All the Qualified Bids other than the Successful Bid and the Alternate Bid shall be deemed rejected by the Sellers on and as of the date of approval of the Successful Bid and the Alternate Bid by the Bankruptcy Court, as indicated above.

### Good Faith Deposits

The Good Faith Deposit of any Alternate Bidder shall be retained by the Sellers until the Alternate Bid Expiration Date and returned to the Alternate Bidder within five (5) Business Days thereafter or, if the Alternate Bid becomes the Successful Bid, shall be applied to the purchase price to be paid by the Alternate Bidder in accordance with the terms of the Alternate Bid. The Good Faith Deposits of Qualified Bidders not selected as either the Successful Bidder or Alternate Bidder shall be returned to such bidders within five (5) Business Days of the date of the selection of the Successful Bidder and the Alternate Bidder. The Good Faith Deposit of the Successful Bidder will be dealt with in accordance with the terms of the Successful Bid. In the event of a credit bid, neither the DIP Agent, the ABL Agent, the Term Loan Agent nor the Sub Loan Agent shall be required to post a Good Faith Deposit.

### Reservation Of Rights

The Sellers, after consultation with their advisors and the Consultation Parties, and their respective advisors, (a) after each round of bidding at the Auction may determine which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof, (b) may reject, at any time, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Sellers, their estates, and stakeholders as determined by the Sellers in consultation with the Consultation Parties, and (c) except as otherwise specifically set forth herein with respect to instances in which the consent of the

Consultation Parties is required, may modify the Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Assets.